**OMNI DEVELOPMENT CORPORATION and Dennis Witte, Plaintiffs,**

**v.**

**ATLAS ASSURANCE COMPANY OF AMERICA, a foreign corporation, Defendant–Appellant,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA, a foreign corporation, Intervenor–Appellee.**

No. 97CA0179.

Colorado Court of Appeals, Div. I.

April 2, 1998.

Rehearing Denied April 30, 1998.

Certiorari Pending June 22, 1998 (98SC350).

No Appearance for Plaintiffs.

Wood, Ris & Hames, P.C., F. Michael Ludwig, Dennis A. Hanson, Denver, for Defendant–Appellant.

Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, LLP, Kevin F. Amatuzio, Joel A. Kolodny, Denver, for Intervenor–Appellee.

Opinion by Judge DAVIDSON.

In this declaratory judgment action, defendant, Atlas Assurance Company of America, appeals from the summary judgment entered against it in favor of Insurance Company of North America (INA) as the intervenor seeking reimbursement for insurance proceeds paid by INA to plaintiffs, Omni Development Corporation (Omni) and Dennis Witte. We affirm.

In 1982, Hampden Center Limited (HCL) acquired, among other properties, a five-story office building subject to a senior mort-

gage held by Teachers' Insurance and Annuity Association (TIAA). INA provided insurance for TIAA's interest in the building.

In October 1986, HCL filed a petition for bankruptcy and reorganization under Chapter 11 of the United States Bankruptcy Code. On September 11, 1989, the bankruptcy court approved HCL's second amended plan of reorganization. Among other things, the plan called for HCL to abandon the office building and provided for an adversary proceeding to determine the disputed interest in a parking lot adjacent to the building. TIAA also was given the option at the time of abandonment to accept a deed in lieu of foreclosure. Between the time the plan was confirmed and March 1992, when the interests in the adjoining parking lot were settled and an amendment to the reorganization plan was approved, TIAA did not accept a deed in lieu of foreclosure and took no action to foreclose or otherwise obtain possession of the building.

After confirmation of the bankruptcy plan, HCL quitclaimed its interest in the building to the holders of a leasehold interest in the ground under the building. They in turn quitclaimed this interest to Omni and Witte.

On December 21, 1990, water pipes froze and burst in the building causing extensive damage.

TIAA sold its note secured by the mortgage in the building to plaintiffs on April 1, 1992. Thereafter, on June 29, 1993, TIAA assigned to plaintiffs its interest in any insurance proceeds up to $500,000 that might be recovered from the claim on the office building.

Plaintiffs inquired about coverage by defendant which informed them that its policy had terminated prior to the occurrence and had been replaced by another company.

Shortly thereafter, plaintiffs submitted a claim to INA. After investigating the loss, INA paid plaintiffs $495,000 to settle the claim. Plaintiffs also signed a subrogation agreement giving INA the right to pursue recovery for "damages for any claim for damages arising as a result of the incident."

Plaintiffs then filed suit seeking to determine liability for the insurance claim. INA was permitted to intervene in the action. The trial court determined that the policy issued by defendant was in effect at the time the claim arose, that TIAA had an insurable interest in the building, and that its assignees were entitled to the insurance proceeds. The court then directed defendant, as the primary insurer, to reimburse INA for the amount it paid plaintiffs in satisfaction of the claim.

I.

Defendant first contends that the trial court erred in determining that its notice of cancellation or non-renewal operated to extend coverage under its insurance policy. We disagree.

Summary judgment is a drastic remedy, to be granted only upon a showing that no genuine issue of material fact exists. The non-moving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts. All doubts must be resolved against the moving party. *Peterson v. Halsted,* 829 P.2d 373 (Colo.1992).

Unambiguous provisions of an insurance policy must be given their plain meaning. *American Family Mutual Insurance Co. v. Johnson,* 816 P.2d 952 (Colo. 1991). The cancellation provisions of an insurance policy require strict compliance by an insurer. *State Compensation Insurance Fund v. Building Systems, Inc.,* 713 P.2d 940 (Colo.App.1985).

The insurer has the burden of establishing that an insurance policy has lapsed. *Butkovich v. Industrial Commission,* 690 P.2d 257 (Colo.App.1984).

The pertinent provision of the policy provides that:

> If the Company elects not to renew this policy, the Company will mail to the named insured at the address shown in this policy, written notice of the nonrenewal not less than 90 days before the effective date.

Here, the property was insured under a policy issued by defendant with a stated term

effective from December 1, 1989, to December 1, 1990. The policy contained an endorsement which required written notification to the named insured 90 days prior to cancellation or nonrenewal. Although defendant determined that it would not renew the policy, it failed to notify HCL until October 30, 1990, 31 days before termination. The notice sent by defendant, therefore, stated that:

> You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that the above mentioned policy will expire effective at and from the hour and date mentioned above and the policy will NOT be renewed.

The notice also stated that "cancellation or termination will take effect at: February 1, 1991[at] 12:01 a.m. (standard time)."

In addition, the notice provided for billing the insured in the event of cancellation or termination for the premium earned to the time of cancellation and contained a space for entering the amount of the premium either owed to or by the insured at the time of cancellation.

Defendant asserts, nevertheless, that this notice merely served as an option to renew the policy through February 1, 1991, that HCL chose not to renew the policy for that term, and that the policy, by its own terms, expired on December 1, 1990.

However, the plain language of the insurance contract required 90 days notice to the named insured prior to termination of a policy. Accordingly, under the circumstances, cancellation was effective February 1, 1991. Therefore, the policy was in effect at the time the damage to the building occurred. *See Campbell v. Home Insurance Co.,* 628 P.2d 96 (Colo.1981) (notice of cancellation not void by inclusion of an effective date earlier than the time required under the policy but coverage extended to include required notice period); *Rotenberg v. American Standard Insurance Co.,* 865 P.2d 905 (Colo.App.1993) (proper notice required under statute for cancellation or nonrenewal of insurance policy).

## II.

Alternatively, defendant argues, even if the policy otherwise was extended to February 1, 1991, it was no longer in effect on the date of the loss because it had been canceled by the actions of the named insured when it purchased replacement insurance effective December 1, 1990. We do not agree.

The historical view of the doctrine of cancellation by substitution was that an insured unilaterally could cancel an insurance policy merely by purchasing a substitute policy. *See National Union Indemnity Co. v. Standard Accident Co.,* 179 Ark. 1097, 20 S.W.2d 125 (1929). However, the doctrine of cancellation by substitution is now generally disfavored. *See Glens Falls Insurance Co. v. Founders' Insurance Co.,* 209 Cal.App.2d 157, 25 Cal.Rptr. 753 (1962); *Copley v. Pekin Insurance Co.,* 111 Ill.2d 76, 94 Ill.Dec. 757, 488 N.E.2d 1004 (1986); *Franklin v. Carpenter,* 309 Minn. 419, 244 N.W.2d 492 (1976); *MFA Mutual Insurance Co. v. Southwest Baptist College, Inc.,* 381 S.W.2d 797 (Mo. 1964); *Tyner v. Cherokee Insurance Co.,* 262 S.C. 462, 205 S.E.2d 380 (1974); *Milbank Mutual Insurance Co. v. State Farm Fire & Casualty Co.,* 294 N.W.2d 426 (S.D.1980).

Generally accepted principles of contract law guide this determination. Cancellation by substitution is inconsistent with the principle that the termination of a contract occurs only by agreement of the parties. *Milbank Mutual Insurance Co. v. State Farm Fire & Casualty Co., supra.*

We agree with the modern view of cancellation by substitution and, thus, conclude that an insurance policy may be canceled only by compliance with the terms of the policy, by operation of law, or by mutual agreement of the parties to the contract. Accordingly, at a minimum, notice from the named insured communicated to the insurer that the insured is canceling the policy and obtaining replacement coverage is required to terminate the existing policy.

Here, HCL purchased a new insurance policy after it received notice from defendant that the old policy would terminate on February 1, 1991. The mere fact that the policies overlapped does not cancel the first

policy by substitution. HCL did not notify defendant that it was canceling its existing policy of insurance or give notice that it intended for the new policy to substitute for the old. Thus, the trial court properly determined that the insurance policy issued by defendant was in effect at the time of the incident.

### III.

Defendant also contends that the trial court erred in finding that TIAA, as the mortgagee, had an insurable interest in the damaged property for which plaintiffs, as successors in interest, and INA, as the subrogee, could assert a claim. Defendant argues that, once HCL abandoned the building under the plan of reorganization confirmed by the bankruptcy court, TIAA was no longer a mortgagee but an owner and, as a result, no longer had an interest in the building to insure. We reject this contention.

### A.

■ An insured seeking to enforce a claim under an insurance policy must have an insurable interest in the damaged property. *See Imperial Mortgage Corp. v. Travelers Indemnity Co.*, 43 Colo.App. 74, 599 P.2d 276 (1979).

An insurable interest is "every interest in property or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured." Section 10–1–102(6), C.R.S. 1997; *See Webb v. M.F.A. Mutual Insurance Co.*, 44 Colo.App. 210, 620 P.2d 38 (1980).

■ A mortgagee's insurable interest in property may be extinguished following the satisfaction of the mortgage held on the property. *Imperial Mortgage Corp. v. Travelers Indemnity Co., supra.*

The trial court determined that the abandonment under the bankruptcy plan was merely a physical abandonment that did not affect the ownership of the building. It also determined that, because the ownership did not change, TIAA still possessed an insurable interest in the building as the mortgagee. We agree with the trial court, although upon different grounds, that, at the time of

the damage to the building, TIAA maintained an insurable interest in the property as a mortgagee. *See Gonzalez v. Yancey*, 939 P.2d 525 (Colo.App.1997).

### B.

Here, the bankruptcy court ordered the abandonment of the building in satisfaction of the outstanding mortgage. Defendant claims that the effect of this order was to convert TIAA's interest in the property from that of a mortgagee to an owner in possession of the property and that, as a result, TIAA's insurable interest under defendant's policy was extinguished because the debt to TIAA was satisfied. We do not agree.

The purpose of reorganization under Chapter 11 of the United States Bankruptcy Code is to give a debtor a "fresh start." *See In re Johnston*, 49 F.3d 538 (9th Cir.1995).

■ Under 11 U.S.C. § 1107(a) (1998), the debtor of a bankrupt estate may serve as the debtor-in-possession of the estate under the supervision of the court. In this capacity, a debtor-in-possession has all the rights, except a right to compensation, and all the powers and duties of a trustee. *See In re Hughes*, 704 F.2d 820 (5th Cir. 1983).

■ A bankruptcy court may order abandonment of property if it finds neither benefit nor value to the debtor's estate from administering such property. 11 U.S.C. § 554(b) (1998); *In re K.C. Machine & Tool Co.*, 816 F.2d 238 (6th Cir.1987); *see also In re B.S. Livingston & Co., Inc.*, 186 B.R. 841 (D.N.J.1995) (property that benefits estate remains part of debtor's estate under bankruptcy plan).

■ When a bankruptcy court orders property to be abandoned, title in the property reverts back to the debtor. 11 U.S.C. § 554(c) (1998); *Black v. First Federal Savings & Loan Ass'n*, 830 P.2d 1103 (Colo.App. 1992). As a result, the creditors more readily are able to regain the property of the debtor in which they have an interest without burdening the debtor's estate and the plan of reorganization. *See In re Johnston, supra.*

Upon abandonment, the debtor's estate is divested of control of the property, and it becomes available to creditors to the extent they may have an interest in such property. Interested parties may use the legal procedures available under state law to obtain legal possession of the property to satisfy a debt owed.

However, abandonment is not a means of effecting transfer of title even though a reorganization plan may specifically provide for abandonment of property. Transfer of the property to a creditor to satisfy a debt still requires consent of the parties, delivery, and transfer of title. *See In re R–B–Co., Inc.,* 59 B.R. 43 (Bankr. W.D.La.1986) (creditor, although bound by reorganization plan, is not "forced" to accept property); *BancOhio National Bank v. Nursing Center Services, Inc.,* 61 Ohio App.3d 711, 573 N.E.2d 1122 (1988) (court-ordered abandonment of stock under Chapter 11 plan did not effectuate transfer or disposition of stock to creditor but merely restored ownership to debtor).

Such was the case here. The bankruptcy court ordered abandonment of the office building, and merely reflected TIAA's existing mortgagee interest in the building. At that time, the building was no longer a part of the bankruptcy estate. Instead, title to the building reverted back to HCL. It then became necessary for TIAA to foreclose on the building mortgage in order to take possession of the property. This necessity is reflected in the bankruptcy court's order allowing TIAA the option of accepting a deed from HCL in lieu of proceeding with foreclosure.

Although TIAA was allowed the option of receiving a deed in lieu of foreclosure under the bankruptcy plan, it took no action to foreclose on the property or to assume ownership of the building. There is no evidence that the mortgage was satisfied or that TIAA took possession of the premises at any time prior to the damage to the building. Indeed, all parties noted in a stipulated amendment to the reorganization plan that they anticipated that TIAA would foreclose on the property once the disputed interest in the adjoining parking lot was determined.

Accordingly, no change in ownership occurred, and thus, TIAA maintained an insurable interest in the building as the mortgagee. *See Swofford v. Colorado National Bank,* 628 P.2d 184 (Colo.App.1981) (bank retained legal or equitable claim in property abandoned under court's bankruptcy order for which bank held note).

Defendant does not dispute that it would be responsible for the claim as the primary insurer if TIAA had an insurable interest in the property. Thus, the trial court did not err in determining that TIAA had an insurable interest in the building and in ordering defendant, as the primary insurer, to reimburse INA for the amount it paid on the claim. *See Hyman v. Sun Insurance Co.,* 70 N.J.Super. 96, 175 A.2d 247 (1961) (assignee of a mortgagee has an insurable interest which encompasses the whole amount unpaid upon the mortgage); 3 L. Russ & T. Segalla, *Couch on Insurance 3d* § 42:34 (1995).

The judgment is affirmed.

METZGER and ROY, JJ., concur.