Applicants/Appellants: ISG, LLC, a Colorado limited liability company; Big Bend Farms, LLLP, a Colorado limited liability limited partnership; Dean L & C Company, Inc., a Colorado corporation; Joann Fletcher; Hans Friederichs Jr.; Jo Leyne White Heckman Friederichs; Lorella L. Gadash; Merle G. Hays Children's Trust; Clarence A. Hays; Darrel W. Hays; Delbert R. Hays; Burt White Heckman; Caryol Heckman; Frederick Heckman; Laura White

---

Heckman; Margaret K. Hunker; Charles O. Jones; Ruby L. Jones; Raymond L. May; Tresa I. May; the McKinnis Family Partnership, Ltd., a Colorado limited partnership; Glenda McWilson; Kent Miller; Peg Miller; Dennis Netherton; David H. Nunnery; Anita R. Pointon; Charles T. Pointon; Keith Rasmussen; Gale Tempel; Melody Tempel; Judith M. Tigner; Dawn K. Vanhook; John R. Vodneck; Joshua P. Weimer; Patricia Weimer; Paul Weimer; Barbara Wertz; Steven Wertz; Wooten Investments, Ltd., a Colorado limited partnership; and Michael Lynn Wyckoff.

v.

Objectors/Appellees: ARKANSAS VALLEY DITCH ASSOCIATION and its members the Bessemer Irrigating Ditch Company, Oxford Farmers Ditch Company, Catlin Canal Company (which also filed a separate Statement of Opposition and is named again below), High Line Canal Company, Rocky Ford Ditch Company, Board of Water Works of Pueblo; City of Aurora; Bent County Board of County Commissioners; Catlin Canal Company; Colorado Canal Company; Colorado Springs Utilities; Colorado Water Conservation Board; Colorado Water Protective and Development Association; Randa Davis–Tice; District 67 Irrigating Canals Association and its members the Amity Mutual Irrigation Company, the Fort Bent Canal and Irrigation Company, Keesee Ditch, Buffalo Mutual Irrigation Company, X Y and Graham Canals, Manval Canal and Irrigation Company, the Hyde Mutual Ditch Company; the Fort Lyon Canal Company; Holbrook Mutual Irrigation Company; Andrew Kern Drainage Ditch; Lake Henry Reservoir Company; Lake Meredith Reservoir Company; Lower Arkansas Valley Water Conservancy District; Lower Arkansas Water Management Association; Robert C. Lubbers Revocable Trust; Robert C. Lubbers, Trustee; Board of County Commissioners of the County of Otero; Public Service Company of Colorado d/b/a Xcel Energy; Board of Water Works of Pueblo; Pueblo West Metropolitan District; Pueblo, a municipal corporation; Carl M. Shinn; Mary Jane Shinn; Wendy S. Shinn; Harold D. (Hal) Simpson, Colorado State Engineer; Southeastern Colorado Water Conservancy District; St. Charles Mesa Water District; Henry Earl Tice; United States of America; Upper Arkansas Water Conservancy District; Valley Water Protection Association, LLC; Steve J. Witte, Division No. 2 Engineer; David Findley; David E. Gardner; Susan L. Gardner; J–S Farms, Inc., a Colorado corporation; Heath R. Perdue; Robyn Y. Perdue; Allen Van Whye; and Kathleen Van Whye.

No. 04SA268.

Supreme Court of Colorado,
En Banc.

Sept. 12, 2005.

As Modified on Denial of Rehearing
Oct. 11, 2005.

See also 120 P.3d 710, 2005 WL 2203149.

Harvey W. Curtis & Associates, Harvey W. Curtis, David L. Kueter, Patricia A. Madsen, Sheela S. Stack, Englewood, Dietze and Davis, P.C., Star L. Waring, Karl F. Kumli, III, Boulder, for Applicants/Appellants.

Burns, Figa & Will, P.C., Stephen H. Leonhardt, Scott A. Clark, Alix L. Joseph, Englewood, for Objector/Appellee Southeastern Colorado Water Conservancy District.

Mark A. McDonnell, Las Animas, for Objectors/Appellees Bent County Board of County Commissioners and Bent Conservation District.

Trout, Raley, Montaño, Witwer & Freeman, P.C., Peter D. Nichols, Lisa M. Thompson, Robert V. Trout, Denver, Mendenhall & Malouf, R.L.L.P., H. Barton Mendenhall, Rocky Ford, for Objector/Appellee Lower Arkansas Valley Water Conservancy District.

Lefferdink Law Office, John S. Lefferdink, Lamar, for Objector/Appellee Fort Lyon Canal Company.

Carlson, Hammond & Paddock, LLC, William A. Paddock, Mary Mead Hammond, Beth Ann J. Parsons, Denver, for Objectors/Appellees Board of Water Works, Pueblo, Colorado, Colorado Springs Utilities, Lake Henry Reservoir Company, Lake Meredith Reservoir Company, Colorado Canal Company.

Shinn, Steerman & Shinn, Donald L. Steerman, Lamar, for Objectors/Appellees District 67 Irrigating Canals Association, Amity Mutual Irrigation Company, Carl M. Shinn, Mary Jane Shinn and Wendy S. Shinn.

John W. Suthers, Attorney General, Alexandra L. Davis, Assistant Attorney General, Natural Resources and Environment Section, Denver, for Objector/Appellee Colorado Water Conservation Board and State and Division Engineers.

Duncan, Ostrander & Dingess, P.C., John M. Dingess, Austin Hamre, T. Daniel Platt, Denver, for Amicus Curiae City of Aurora, acting by and through its Utility Enterprise.

Justice HOBBS delivered the Opinion of the Court.

Applicants/Appellees Independent Shareholders Group, LLC and others (collectively, "ISG") appeal the water court's dismissal of their application for a change of water rights. ISG's change application pertains to Fort Lyon Canal Company water shares. This appeal raises the same primary legal question we address in the companion case, *High Plains A & M, LLC v. Southeastern Colorado Water Conservancy District,* Nos. 04SA266 & 04SA267, 120 P.3d 710, 2005 WL 2203149 (Colo. Sept. 12, 2005).

ISG seeks to change the type and place of use of water rights in the Fort Lyon Canal Company ("FLCC") from irrigation of lands under the ditch system to a multitude of possible new uses in any one of twenty-eight eastern Colorado counties. The water court consolidated and dismissed the High Plains and ISG applications for lack of a particularized location or locations to which the transferred water was to be put to beneficial use under the requested change of water right decree.

We apply our decision in *High Plains* to the ISG case. An application for a change in the place of use is for the purpose of determining whether a pre-existing appropriation, with its priority date, can be kept in effect at different locations. As of the filing of its application and the water court's ruling on dismissal, ISG had not identified the locations at which the appropriations will be placed to actual beneficial use under the change decree. ISG made a C.R.C.P. 56(h) motion requesting a ruling on this key issue. We conclude that the water court, having made its legal determination adverse to ISG's position, did not commit reversible error in dismissing ISG's application.

ISG also challenges the water court's entry of summary judgment dismissing its application because no party specifically moved for dismissal of its application or for summary judgment against it. We hold that the trial court did not commit reversible error in sua sponte dismissing the application under the circumstances of this case. Because we affirm dismissal of ISG's application, we reject

ISG's challenge to the costs awarded to the objectors, who are the prevailing parties.

## I.

The facts in this case are essentially parallel to the facts recited in *High Plains. See* 120 P.3d at 710, 2005 WL 2203149. ISG is composed of forty-five farmers and ranchers who own shares in the FLCC, the largest mutual ditch company on the Arkansas River. ISG owns 8,287.05 FLCC shares, or 8.8% of the total outstanding shares.

On August 7, 2003, ISG filed its change of water rights application. ISG proposes changes that are identical to those proposed by High Plains.

The application proposes for decree several new points of diversion, including at headgates on the Holbrook and Colorado canals and "one or more alternate points of diversion" along the Arkansas River between its confluences with Adobe Creek and the Purgatoire River. The application recites that water diverted at these new points may be stored in Holbrook, Dye, Lake Meredith, Lake Henry, and Pueblo reservoirs. The application does not identify structures owned or slated for construction by ISG that would transport the water from these diversion and storage points to particular new places of use.

The application seeks to change the place of use to any of twenty-eight counties where the water might be used:

[i]n addition to lands currently under the Fort Lyon Canal, the subject water rights, both for the previously decreed uses and for the proposed new uses, may be used on any lands that can be served by the subject water rights from the existing and decreed points of diversion and/or places of storage and/or from the proposed alternate points of diversion and/or places of storage listed hereinabove within the following Colorado counties . . .: Otero, Bent, Prowers, Pueblo, Crowley, Kiowa, Custer, Fremont, Chaffee, Park, Teller, El Paso, Lincoln, Elbert, Douglas, Jefferson, Lake, Clear Creek, Gilpin, Denver, Arapahoe, Adams, Washington, Boulder, Broomfield, Larimer, Weld, and Morgan.

The application lists an array of changed uses it wants decreed:

[f]rom irrigation and other presently decreed uses to: all beneficial uses, including but not limited to irrigation, municipal, domestic and household purposes, drinking, cooking, cleaning, showers, toilets, irrigation of yards, lawns, shrubbery, trees, pools, fountains, and landscapes, watering domestic animals; mechanical, manufacturing, and industrial, military, and governmental purposes; bottled water; generation of electric power and power generally; fire suppression and protection; sewage treatment; street sprinkling; irrigation of parks, grounds, golf courses, and open spaces; recreation, golf course hazards, ponds, fishing, and fish propagation; agricultural uses, livestock watering and aquaculture; land and reservoir evaporation; maintenance, preservation and conservation of wildlife, wildlife habitat, wildlife propagation, and wetlands; creating, maintaining and enhancing aesthetic values; in-stream flow; erosion control, siltation control, and flood control; maintaining storage reserves; adjustment and regulation; augmentation; replacement; groundwater recharge; exchange . . . .

The application states that "[a]fter the change, the subject water rights will still be able to be utilized for agricultural and irrigation purposes . . . on lands under the Fort Lyon Canal."

The application seeks a decree for one-hundred percent consumptive use of the water derived from exercise of the changed water rights:

[a]pplicants seek a decree from the Court that they have the right to use, reuse, and successively use to extinction, and dispose of, by sale, exchange or otherwise, all water lawfully diverted and/or stored pursuant to any decree entered in this case.

ISG made a presentation in tandem with High Plains to the FLCC Board regarding the proposed changes. The Board concluded that the changes could be decreed without injury to other water users if particular con-

ditions were imposed. *See High Plains,* 120 P.3d at 716, 2005 WL 2203149.

On November 1, 2003, ISG filed a motion in the water court to consolidate its change application with the applications filed by High Plains. ISG recited, as reasons for consolidation, that the cases "have common issues of law and fact, in that all cases involve changes of water rights in the Fort Lyon Canal Company, including common structures, evidence and witnesses," and therefore consolidation would "promote judicial economy and ... result in a fair resolution of these matters without unnecessary expense or delay." The water court granted the motion.

On December 19, 2003, ISG filed a motion for a C.R.C.P. 56(h) determination of a question of law, requesting a water court ruling that the anti-speculation doctrine, *see* § 37–92–103(3), C.R.S. (2005), and *Colo. River Water Conservation Dist. v. Vidler Tunnel Water Co.,* 197 Colo. 413, 417, 594 P.2d 566, 568 (1979), and the "can and will" requirements of section 37–92–305(9)(b), C.R.S. (2005), apply only to new appropriations in proceedings for absolute or conditional water rights and not to change application proceedings.

On January 26, 2004, objectors Southeastern Colorado Water Conservancy District and others (collectively, "Southeastern") filed a motion for summary judgment asking for dismissal of the two High Plains applications. Southeastern argued that the applications violated the anti-speculation doctrine, primarily because the applicants had no contracts with end users of the water and "fail[ed] to specify any particular location or use to which the water will be applied." Southeastern did not request summary judgment in the ISG case; nor did any other objector. However, Southeastern did file a separate response to ISG's C.R.C.P. 56(h) motion, in which it argued that the ISG application also violated anti-speculation principles. In filing its separate response Southeastern clearly stated that it was "not moving for summary judgment in [the ISG case]."

Nevertheless, because the controlling legal issue was the same in the consolidated High Plains and ISG applications and the material facts were uncontested on that issue, the water court dismissed all the applications, even though a summary judgment motion had not been filed in the ISG case.

ISG appeals the water court's ruling on the merits of the dismissal. ISG also argues the court erred in sua sponte dismissing its application because no party specifically requested dismissal or filed for summary judgment in regard to ISG's application. In addition, ISG challenges the water court's award of costs to Southeastern as the prevailing party because Southeastern did not file a motion with regard to ISG on which it could have prevailed.

## II.

We apply our decision in *High Plains* to the ISG case. An application for a change in the type and place of use is for the purpose of determining whether a pre-existing appropriation, with its priority date, can be kept in effect at different locations. As of the filing of its application and the water court's ruling on dismissal, ISG had not identified the locations at which the appropriations will be placed to actual beneficial use under the change decree. ISG made a C.R.C.P. 56(h) motion requesting a ruling on this key issue. We conclude that the water court, having made its legal determination adverse to ISG's position, did not commit reversible error in dismissing ISG's application.

Having applied our *High Plains* decision to the identical legal issue in this case for the reasons expressed in that opinion, we now proceed to address ISG's contentions not addressed in that decision.

We first consider ISG's argument that the water court erroneously dismissed its application sua sponte. We then discuss ISG's argument that it will lose valuable historical consumptive use volume if it cannot get a change of water right decree at this stage.

### A. Sua Sponte Dismissal of Change Applications

Summary judgment is only proper when "pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c).

We review summary judgments de novo, resolving all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.,* 114 P.3d 862, 865 (Colo.2005). When there is no disputed material fact, and the moving party is entitled to immediate judgment by virtue of the application of clear principles of law, dismissal of the claim is proper. *Id.*

In reviewing de novo the dismissal of claims as a matter of law, we have not limited ourselves to technicalities of procedural labels. For example, in some cases, we have found it "wholly immaterial" whether the trial court's dismissal is labeled a summary judgment or a dismissal for failure to state a claim under C.R.C.P. 12(b), because the legal propriety of the dismissal and its ultimate effect would be the same under either rule. *See Haigler v. Ingle,* 119 Colo. 145, 148, 200 P.2d 913, 914 (1948).

Dismissal may be proper even in cases where no motion requesting dismissal has been filed. *See* 11 James Wm. Moore, *Moore's Federal Practice* ¶ 56.10[2][b] at 56–53 (3d ed.2005)("[A] court need not actually receive submissions of the parties but must at least provide parties with a sufficient opportunity to submit materials or argument supporting or opposing" dismissal.) Federal courts have held that sua sponte entry of summary judgment under Fed.R.Civ.P. 56—identical to Colorado's rule except for the time allowed for filing a summary judgment motion—may be proper if the rights of the nonmoving party are adequately protected. *Kennedy v. Whitehurst,* 509 F.Supp. 226, 232 (D.D.C.1981); *cf. Bowdidge v. Lehman,* 252 F.2d 366, 368–69 (6th Cir.1958)(reversing summary judgment where nonmoving party did not receive ample notice and opportunity to oppose). To protect the nonmoving party, the trial court must provide an adequate opportunity to present legal argument and to assert contested facts that would render summary judgment inappropriate. *See* Moore, *supra,* ¶ 56.10[2][b] at 56–53; *see also*

*First Nat'l Bank of Telluride v. Fleisher,* 2 P.3d 706, 715 (Colo.2000).

De novo review of the record in summary judgment cases may reveal that the party against whom summary judgment was entered was on notice of the matters of law at issue and had an adequate opportunity to present legal argument and evidence, despite technical irregularities. *See Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1199 (Colo.App. 2003). In *Hottenstein,* a case decided by our court of appeals, the respondent alleged a breach of duty under a construction contract. The trial court granted the respondent an extension of time in which to respond to a motion for summary judgment. *Id.* at 1198. Nevertheless, the trial court entered summary judgment against the respondent before the enlarged time period expired, thereby foreclosing her ability to present evidence or argument opposing the motion. *Id.*

In *Hottenstein,* the appellate court ruled that the trial court had abused its discretion by not allowing the respondent to reply to the motion within the allotted time. *Id.* at 1199. However, the court also found this error to be harmless. Reviewing the record de novo and construing the contract at issue, the reviewing court upheld summary judgment as a matter of law. *Id.* at 1199–1202. The premature entry of summary judgment was simply not prejudicial because the trial court's ruling, as a matter of law, was correct and would have led to the same result had all the technicalities of the summary judgment process been followed. *Id.* at 1202.

Federal courts will not reverse a summary judgment because the nonmoving party did not have an opportunity to respond to the motion unless the nonmoving party can show that it was prejudiced. 2 James Wm. Moore, *Moore's Federal Practice* ¶ 12.34[3][b] at 12–72.4 (3d ed.2005). For example, when a court sua sponte converts a motion for failure to state a claim into a motion for summary judgment by accepting extrinsic evidence, federal appellate courts will not reverse a summary judgment if the party against whom summary judgment was entered cannot show that different notice or a different opportunity to respond would have allowed

presentation of some evidence or argument on which the complaint could have survived summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 184 F.3d 280, 287–89 (3d Cir.1999); *Moody v. Town of Weymouth,* 805 F.2d 30, 31–32 (1st Cir.1986).

■ Thus, precedent shows that a technically flawed dismissal may be affirmed, if it was entered as a matter of law and the party that lost its claim had adequate opportunity but did not offer any evidence or argument on which the claim could have survived.

■ Here, ISG was afforded sufficient notice of its vulnerability to summary judgment on the legal issues raised by its application; ISG asserted its position on those issues in its C.R.C.P. 56(h) motion. First, ISG moved to consolidate its application with the High Plains applications almost three months before Southeastern filed its motion for summary judgment on the High Plains applications. ISG argued that consolidation was appropriate because its application and the High Plains applications presented similar issues of law and fact and a consolidated judgment would be fair and economical. In fact, all material and legal issues pertinent to the dismissal of the applications are identical.

Secondly, ISG moved for a C.R.C.P. 56(h) ruling of law that the anti-speculation doctrine does not apply to change applications. The water court's ruling on the C.R.C.P. 56(h) motion made dismissal inevitable. In fact, ISG appears before this Court seeking reversal of the water court's legal ruling on its C.R.C.P. 56(h) motion, which it could not do in absence of an appealable judgment or C.R.C.P. 54(b) certification. In this posture, the lack of a summary judgment motion is not unduly prejudicial to ISG; the water court entered final judgment and the dismissal order is appealable.

Third, ISG has not shown that undue prejudice resulted from the water court treating its ruling on the C.R.C.P. 56(h) motion as determinative. ISG argues that it should have had the opportunity to present evidence of its members' intentions with regard to use of the water under the change decree. Inherent in that argument is the assumption that such evidence would have allowed the application to survive dismissal. However, the water court did not base its dismissal on the issue of intent. Instead, the court was concerned that no actual end users or places of use where the water would be put to beneficial use were identified in the applications or at the time of ISG's C.R.C.P. 56(h) motion.

We conclude that ISG had sufficient opportunity in the water court to argue its theories and to present evidence on the very issue that the water court found dispositive in the consolidated cases. We agree with the water court's dismissal for the reason that ISG's application is insufficient as a matter of law because the applicant failed to identify places where the water would be put to actual beneficial use under the sought-for change decree.

■ Although sua sponte entry of summary judgment is unusual and might ordinarily constitute a prejudicial abuse of discretion, the water court had sufficient legal grounds on which to dismiss ISG's change application either sua sponte or in response to a summary judgment motion. Accordingly, we affirm dismissal of the application and reject ISG's challenge to the award of costs to Southeastern, which is the prevailing party. *See Langseth v. County of Elbert,* 916 P.2d 655, 657 (Colo.App.1996)(prevailing party is one who had "success on a significant issue presented by the litigation and achievement of some of the benefits sought in the lawsuit").

### B. Temporary Changes and Historic Consumptive Use

In accordance with the applicable statutes and case law, appropriators may apply for permanent changes in their decreed points of diversion, uses, or places of use. This has been Colorado statutory law since 1899. *See* An Act in Relation to Irrigation, ch. 105, sec. 1, 1899 Colo. Sess. Laws 235 (providing for petition procedure to make changes to decreed water rights). The case law on this point is even earlier. We recognized the propriety of changing water rights decreed for agricultural uses to municipal uses as early as 1891, in *Strickler v. Colorado Springs,* 16 Colo. 61, 26 P. 313 (1891).

■ ISG argues that its members' abilities to make temporary exchanges, leases or loans of their water rights to other users for other purposes is infringed by the water court's dismissal of its application. ISG posits a theory that, under *Santa Fe Trail Ranches Property Owners Ass'n v. Simpson,* 990 P.2d 46, 52 (Colo.1999), its members will not be able to later claim as historic consumption any water volume that they put to temporarily changed uses if they do not have a change decree. ISG analogizes temporary changes of water rights without a change decree to the undecreed uses that were deemed to be unavailable for historic consumptive use measurement in *Santa Fe Trail Ranches.*

There is a critical flaw in ISG's argument under *Santa Fe Trail Ranches.* In that case, we determined that undecreed uses, made without benefit of statutory authorization, could not be considered part of the beneficial use for which the right was originally decreed. *See* 990 P.2d at 59. In *Santa Fe Trail Ranches,* the applicant had no records of the historical beneficial use made through the decreed point of diversion and wished to substitute records of use made through an undecreed point of diversion at a new place of use. *Id.* at 50–52.

In contrast, the kinds of temporary changes alluded to by ISG are authorized by statute. In addition to permanent changes of water rights, state water law now allows for a variety of means by which the type or place of use decreed to a water appropriator may be changed temporarily. *See, e.g.,* § 37–80.5–104 to –106, C.R.S. (2005)(allowing for creation of water banking programs for leasing, loaning, and exchanging stored water rights when approved by the state engineer); § 37–83–104, C.R.S. (2005)(providing for exchange of water between streams or between reservoirs and ditches when approved by the state engineer); § 37–83–105, C.R.S. (2005)(allowing decreed agricultural users to loan all or a portion of their water right to another agricultural user in the same stream system for up to 180 days in a year when approved by the division engineer); § 37–92–309, C.R.S. (2005)(providing for temporary interruptible water supply agreements be-tween decreed owners and loaning use of water for up to three out of ten years when approved by the state engineer).

For example, the legislative declaration to the stored water bank pilot program reflects legislative support for temporary transfers from agriculture to other types of use at other places of use:

> The water bank program created by this article is intended to *simplify and improve the approval of water leases, loans, and exchanges, including interruptible supply agreements,* of stored water within each river basin, *reduce the costs associated with such transactions,* and increase the availability of water-related information. It is also the purpose of the water banks to *assist farmers and ranchers by developing a mechanism to realize the value of their water rights assets* without forcing the permanent severance of those water rights from the land. The general assembly *affirms the state constitution's recognition of water rights as a private usufructuary property right, and this article is not intended to restrict the ability of the holder of a water right to sell, lease, or exchange that water right* in any other manner that is currently permitted under Colorado law.

§ 37–80.5–102, C.R.S. (2005)(emphasis added).

■ When adjudicating a proposed permanent change to use of a water right, a court must determine the historic consumptive use made of that water right. *Santa Fe Trail Ranches,* 990 P.2d 46, 52 (Colo.1999). This is one of the basic predicates of water law dating to the nineteenth century; a change application continues the rights decreed in the original appropriation in a new form and may not expand the amount of water actually used under the original decree. *Id.* at 53 (*citing* Clesson S. Kinney, *A Treatise on the Law of Irrigation* 375 (1894)).

In *Santa Fe Trail Ranches,* we held that undecreed uses of water may not be factored into a determination of the historic beneficial use under a water decree for purposes of entering a change decree. *Id.* at 57. In that case, the applicant wished to change uses of manufacturing rights that it had purchased. The applicant's predecessor had

created a new point of diversion to put its decreed manufacturing water right to new use for irrigation on different acreage. None of these changes were decreed by a water court. We held that "[a]n undecreed change of use of a water right cannot provide the basis for quantifying the right for change purposes." *Id.* at 59. Although the applicant argued our holding would foreclose exchanges, leases and other management practices, we explicitly found that temporary exchanges and leases, provided for by statute, would not be affected by the rule of *Santa Fe Trail Ranches. Id.*

■ The primary purposes for the historic consumptive use requirement in a permanent transfer adjudication is to prevent enlargement of the water right and to define and include decree conditions necessary to protect against injury to other water rights. *See Farmers Reservoir & Irrigation Co. v. City of Golden,* 44 P.3d 241, 246–47 (Colo.2002)(extensively explaining the traditional proscriptions against enlargement of decreed water rights and the protections provided by the historic consumptive use limitation on changes). The situs of the decreed water right is the place at which the historic consumptive use calculation is made.[1] *See Santa Fe Trail Ranches,* 990 P.2d at 54 ("[T]he right to change a water right is limited to that amount of water actually used beneficially pursuant to the decree at the appropriator's place of use.")

ISG asserts that its members might want to take advantage of temporary changes that would optimize either the value or the beneficial use of their water rights in particular years and under particular conditions. Nothing in our decisions in *High Plains* or this case prevents ISG shareholders from proceeding under statutes that provide for a variety of means by which changes can be made on a temporary basis with approval by the state or division engineer. *See, e.g.,* §§ 37–80.5–104 to –106, 37–83–104, 37–83–105, 37–92–309, C.R.S. (2005).

The statutorily authorized temporary changes of use proceed through the state or division engineer, and the water court reviews on appeal questions of injury; the court may review the applicant's initial estimate of the historic consumptive use of water and the state or division engineer's determination that no injury to other users will result. *See, e.g.,* § 37–80.5–104.5(1)(c), C.R.S. (2005)(for deposit into stored water bank, state engineer requires proof of "legal parameters of the water for use" and must administer any water withdrawn from a bank "[w]ithout causing material injury to the owner of or persons entitled to use water under a vested water right"); § 37–83–105(2)(b), C.R.S. (2005)(for temporary agricultural loan, applicant must submit "reasonable estimate of the historic consumptive use of the loaned water right" and division engineer must ensure that no injury will result from the loan); § 37–92–309(3)(a) & (b), C.R.S. (2005)(applicant for interruptible water supply agreement must submit report evaluating "the historical consumptive use, return flows, and the potential for material injury to other water rights;" and state engineer approval is dependent on a determination that the agreement "will effect only a temporary change in the historic consumptive use of the water right in a manner that will not cause injury to other water rights").[2]

Each of the temporary changes requires particular evidence to be presented to the state or division engineer regarding the timing, duration, purpose, and volumetric mea-

---

1. The situs of the historical use of water made through the decreed point of diversion is typically a matter of proof in the change decree proceeding because actual beneficial use is the basis, measure, and limit of the appropriation and many decrees do not specify the place of use, only the point of diversion, the name of the structure carrying the water, and, sometimes, the number of acres to be irrigated.

2. ISG resists dismissal of its application by arguing that it is entitled, at least, to a water court consumptive use determination in order to ascer-

tain the amount of water it may use for augmentation and replacement under the water banking statute, section 37-80.5-104.5(1)(c), C.R.S. (2005). We disagree. For purposes of this statute and the Arkansas River Water Bank Pilot Program rules, the State Engineer determines the allowable quantity of consumptive use in connection with participation in the program. In particular, Rule 8 provides the administrative mechanism for calculating historic consumptive use for purpose of the water banking program.

sure of the temporary change to be made and approved. *See, e.g.,* § 37–80.5–104.5(1)(c), C.R.S. (2005)(deposit into and withdrawal from stored water banks requires a definition of the quantities of water involved and the proposed uses); § 37–83–104, C.R.S. (2005)(requiring those exchanging reservoir and ditch rights to build measurement devices so the engineer "may readily determine and secure the just and equitable exchange of water"); § 37–83–105(2)(b)(I), C.R.S. (2005)(requiring applicant for temporary agricultural loan to supply proof of, among other things, decreed water right, duration of plan, description of diversions, return flow patterns, and a reasonable estimate of historic consumptive use); § 37–92–309(3)(a), (4)(a), C.R.S. (2005)(requiring applicant for interruptible water supply agreement to submit written report estimating historical consumptive use, return flows, potential for injury; state engineer provides copies of approval or denial to all parties and the decision can be reviewed by the water court).

By enacting these statutes, the General Assembly has authorized short-term changes that do not penalize the appropriator in any subsequent change of water right proceeding. The methodology for calculating historic consumptive use of the water rights over a representative period of time for a permanent change will not count or discount the years of authorized temporary use. *See City & County of Denver v. Brown,* 56 Colo. 216, 233, 138 P. 44, 50 (Colo.1913)(holding that city's temporary lease of water rights preserved the rights "exactly as though it had continued the use of such water"); *see also* An Act Concerning Conditions under which the Owner of a Water Right can Overcome a Presumption of Abandonment of the Water Right, S.B. 05–133, 65th Gen. Assem., 1st Sess. (Colo.2005)(§ 37–92–103(2), providing that temporary nonuse of water under state conservation programs, municipal conservation programs, approved land fallowing programs, or water banks does not indicate an intent to discontinue permanent use).

ISG's argument that it will suffer an "historic consumptive use penalty" by taking advantage of statutory temporary changes to its water rights without a change decree is not correct. Unlike the applicant for a permanent change of water rights in *Santa Fe Trail Ranches,* any authorized temporary changes to type or place of use made by ISG will not serve to reduce its historic consumptive use allocation as measured by operation of the FLCC decreed water rights. Nor will those changes give rise to a presumption of discontinuance or abandonment. The legislature clearly intended to promote flexibility in the administration of water rights, especially in the circumstances of temporarily transferring water from agricultural use to municipal use on a contract basis. It did not intend to penalize owners of decreed appropriations for properly taking advantage of these statutes according to their terms.

**III.**

Accordingly, we affirm the water court's dismissal of ISG's change application without prejudice to its re-filing, consistent with our decision in *High Plains.*