Opinion by
Judge HAWTHORNE.
In this action to recover damages for the denial and delayed payment of automobile insurance benefits, plaintiffs, the Estate of Joseph Geiger, through the administrators, Debra Chambers and Donna Padgett, and Leanne Geiger, appeal the summary judgment entered in favor of defendant, American Standard Insurance Company of Wisconsin. We reverse and remand for further proceedings.
I. Background
On April 6, 2000, Joseph and Leanne Geiger, a married couple living in the same residence, applied for automobile insurance for a vehicle they jointly owned. American Standard issued an automobile insurance policy to Leanne (wife), but did not list Joseph (hus *482 band) as a named policyholder because he did not have a driver's license.
On November 12 and December 12, 2001, American Standard sent notices to Leanne Geiger stating that her policy payments were overdue and that her policy would be can-celled if payments were not immediately received. No payments were made.
On January 26, 2002, the Geigers were involved in an accident while Leanne was driving the car listed on the policy. The Geigers sought personal injury protection (PIP) benefits under the policy, but American Standard denied the claim because it deemed the policy cancelled for nonpayment. The Geigers, however, asserted that the policy remained in effect because American Standard had not mailed a notice of cancellation to Joseph Geiger, as required by the plain terms of the policy. American Standard nevertheless continued to deny the claim for coverage.
The Geigers then brought suit against American Standard, seeking PIP benefits under the policy, as well as statutory treble damages under section 10-4-708(1.8) of the former Colorado Auto Accident Reparations Act (No-Fault Act), Ch. 94, see. 1, §§ 18-25-1 to -28, 1978 Colo. Sess. Laws 834-45 (formerly codified as amended at §§ 10-4-701 to -726; repealed effective July 1, 2008, Ch. 189, see. 1, § 10-4-726, 2002 Colo. Sess. Laws 649).
The Geigers then moved for summary judgment on the issue of coverage, and American Standard filed a cross-motion. The trial court entered summary judgment for American Standard, accepting its argument that the terms of the policy were not intended to apply to Joseph Geiger because he did not have a driver's license and was therefore not insurable.
The Geigers appealed, and a division of this court reversed the summary judgment and directed the trial court to enter judgment for the Geigers on the issue of coverage. Geiger v. Am. Standard Ins. Co., 117 P.3d 16 (Colo.App.2004) (Geiger I). The division noted that the policy term setting forth the procedure for cancellation was clear and unambiguous, and because American Standard did not comply with the term, its purported cancellation was ineffective. The mandate issued on April 22, 2005, and the trial court entered judgment for the Geigers on the issue of coverage on June 16, 2005.
On July 5, 2005, the Geigers moved for summary judgment on the issue of the amount of PIP benefits owed. American Standard filed its answer brief on the issue on July 28, 2005, and the Geigers filed their reply on August 5, 2005. American Standard paid the PIP benefits eight days later.
Following the mandate in their favor on the issue of coverage, the Geigers moved to amend their complaint to add claims of bad faith breach of insurance contract, common law willful and wanton breach of contract, and punitive damages. American Standard moved for summary judgment on these claims, and the Geigers filed a cross-motion for summary judgment on their claim of statutory willful and wanton conduct under the No-Fault Act. The parties filed further motions and briefs until the court ultimately entered summary judgment for American Standard on each of the Geigers claims. The Geigers appeal.
II. Standard of Review
Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo. Lutfi v. Brighton Cmty. Hosp. Ass'n, 40 P.3d 51, 54 (Colo.App.2001).
III. Statutory Willfal and Wanton Conduct
The Geigers contend the trial court erred in entering judgment for American Standard upon the parties' eross-motions for summary judgment on the issue of willful and wanton conduct under section 10-4-708(1.8) of the former No-Fault Act. We agree.
As an initial matter, we note that the denial of the Geigers' motion for summary judgment is a final, appealable order because it was part of the trial court's entry of judgment for American Standard, which effectively ended the litigation in the trial court. Glennon Heights, Inc. v. Cent. Bank & *483 Trust, 658 P.2d 872, 875 (Colo.1983) (denial of a motion for summary judgment is an appealable order when it effectively puts an end to the litigation, as when eross-motions result in entry of judgment for one party and a denial for the other).
Section 10-4-708(1.8) of the No-Fault Act required an insurer to pay three times the amount of unpaid benefits when the insurer's failure to pay was willful and wanton:
The insurer shall pay interest to the insured on the benefits recovered at a rate of eighteen percent per annum, with interest commencing from the date the benefits recovered were due. In addition, in the event of willful and wanton failure of the inswrer to pay such benefits when due [including PIP benefits under section 10-4-706(1)(b) ], the insurer shall pay to the insured, in addition to any other amounts due to the insured under this subsection (1.8), an amount which is three times the amount of unpaid benefits recovered in the proceeding.
(Emphasis added.)
An insurer's failure to pay benefits when due is deemed "willful and wanton" under the No-Fault Act when it is "without justification or in disregard of [the insured's] rights." Giampapa v. Am. Family Mut. Ins. Co., 64 P.3d 230, 245 n. 12 (Colo.2003); Dale v. Guar. Nat'l Ins. Co., 948 P.2d 545, 551 (Colo.1997). Moreover, an insured's rights under an automobile insurance policy are defined by the terms of the policy. Lopez v. Dairyland Ins. Co., 890 P.2d 192, 194 (Colo.App.1994).
Here, the cancellation provision of Leanne Geiger's policy stated that "we may cancel by mailing notice of cancellation to you by certified mail at the address shown in the policy" (emphasis in original). The policy defined "you" as "the policyholder named in the declarations and spouse, if living in the same household" (emphasis in original).
As determined by the division in Geiger I, the policy's cancellation provision and its definition of "you" were clear and unambiguous. There were no terms limiting those provisions, nor were there terms suggesting that the "spouse" included in the definition of "you" was limited to spouses who were named policyholders, had driver's licenses, or were otherwise insurable. Rather, the plain terms of the policy required American Standard to mail notice to both the policyholder, Leanne Geiger, and her resident spouse, Joseph Geiger, in order to cancel the policy. Geiger I, 117 P.3d at 19.
The division further noted the established rule that an insurer must strictly comply with the cancellation provisions of an insurance policy. Omni Dev. Corp. v. Atlas Assurance Co., 956 P.2d 665, 667 (Colo.App.1998). The division thus held that American Standard's undisputed failure to mail a cancellation notice to Joseph Geiger rendered its purported cancellation void. Geiger I, 117 P.3d at 19.
Nevertheless, American Standard argues that its repeated refusal to pay PIP benefits under the policy was not willful and wanton. Rather, American Standard asserts the Geigers' claim was fairly debatable because there was a reasonable basis for believing the notice of cancellation mailed only to Leanne Geiger effectively cancelled the policy. See Brennan v. Farmers Alliance Mut. Ins. Co., 961 P.2d 550, 557 (Colo.App.1998) (insurers may challenge claims that are fairly debatable). American Standard notes that the first trial court entered judgment and attorney fees in its favor and asserts that the Geigers' appellate victory was based on a "novel" theory of coverage. American Standard also argues that its denial of benefits was justified because it used a "common sense" approach to interpreting the cancellation provision, which recognized the "importance and integrity of the institution of marriage" by treating notice to Leanne Geiger as equivalent to notice to her husband.
However, contrary to American Standard's suggestion, the Geigers' claim was not fairly debatable because there was no reasonable basis for American Standard to assert that its notice effectively cancelled the policy. See Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1275 (Colo.1985) (claim is fairly debatable only when insurer has reasonable basis for denying the claim). As noted by the division in Geiger I, the policy clearly and *484 unambiguously required American Standard to mail a cancellation notice to both Leanne and Joseph Geiger. See Geiger I, 117 P.3d at 18-19. And because insurers must strictly comply with a policy's cancellation provisions as written and may not read into a policy additional terms that are not expressly included therein, there could be no debate that American Standard did not effectively cancel the policy by mailing a cancellation notice only to Leanne Geiger. See Omni Dev. Corp., 956 P.2d at 667; Ahmadi v. Allstate Ins. Co., 22 P.3d 576, 578 (Colo.App.2001). Thus, the first trial court's ruling to the contrary does not render the issue debatable, as the ruling disregarded the plain language of the policy and the controlling rules of law. See Savio, 406 P.2d at 1275 (there must be a reasonable basis for denying a claim to qualify as fairly debatable).
Moreover, the Geigers did not prevail on appeal on the basis of a novel theory of coverage. Although no court had interpreted the specific cancellation provision contained in Leanne Geiger's policy, the provision was clear and unambiguous and contained no qualifications. See Geiger I, 117 P.3d at 18-19. A plain reading of unambiguous terms is not novel, nor is the application of well-established, undisputed rules of law. (Indeed, in its answer brief in Geiger I, American Standard acknowledged the rule that insurers must strictly comply with cancellation provisions in a policy.) American Standard also cites no authority for the proposition that an insurer may take a "common sense" approach to interpreting a policy cancellation provision when such an approach leads to a result that differs from the provision's plain meaning.
Thus, based upon the undisputed facts and law, we conclude as a matter of law that American Standard disregarded the Geigers' unambiguous rights under the policy and acted without justification in refusing to pay PIP benefits. Accordingly, American Standard's repeated refusal to pay such benefits was willful and wanton under the No-Fault Act. See Giampapa, 64 P.3d at 245 (insurer's failure to pay for necessary medical equipment as required by the policy was willful and wanton under No-Fault Act).
The trial court therefore erred in granting American Standard's motion for summary judgment on the issue of willful and wanton conduct under the No-Fault Act and denying the Geigers' motion. Accordingly, we reverse the summary judgment and remand with instructions to grant the Geigers' motion for summary judgment on their claim of statutory willful and wanton conduct under section 10-4-708(1.8) of the No-Fault Act. See Geiger I, 117 P.3d at 20 (directing entry of judgment for plaintiffs after trial court incorrectly entered judgment for defendant following parties' cross-motions for summary judgment).
IV. Effect of Disposition on Remaining Claims
Willful and wanton conduct under the No-Fault Act necessarily constitutes common law bad faith breach of insurance contract and common law willful and wanton breach of contract. See Giampapa, 64 P.3d at 245 (because the definition of wiliful and wanton conduct under the No-Fault Act is narrower than the common law definition, a determination of willful and wanton conduct under the No-Fault Act satisfies a common law willful and wanton conduct claim); Dale, 948 P.2d at 551 (same, but regarding bad faith claims).
Thus, we reverse the trial court's summary judgment entered on the Geigers' common law willful and wanton and bad faith claims and direct the trial court upon remand to enter judgment as to liability for the Geigers on those claims as well. See Pueblo of Santa Ana v. Mountain States Tel. & Tel. Co., 734 F.2d 1402, 1408 (10th Cir.1984) (appellate court may enter summary judgment for non-movant when there are no genuine issues of material fact in dispute), rev'd on other grounds, 472 U.S. 237, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985); Holt v. Bowen, 712 F.Supp. 813, 819 (D.Colo.1989) (same); ISG, LLC v. Ark. Valley Ditch Ass'n, 120 P.3d 724, 781 (Colo.2005) (no abuse of discretion for appellate court to enter summary judgment without a motion from the prevailing party); McDaniels v. Laub, 186 P.3d 86 (Colo.App.2008) (Colorado courts may look to federal authority when construing *485 C.R.C.P. 56); 10A Wright, Miller, and Kane, Federal Practice and Procedure Civil § 2720, at 20-30 (2d ed.2007) ("summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56").
Moreover, because American Standard's denial of the Geigers' PIP claim was willful and wanton and in bad faith, we need not address the Geigers' additional arguments that American Standard also acted willfully and wantonly and in bad faith by delaying payment following Geiger I, including their assertion that the trial court abused its discretion in denying certain discovery requests that sought information to prove American Standard's lability. See Wall v. City of Aurora, 172 P.3d 934, 938 (Colo.App.2007) (declining to address issues rendered moot by court's disposition). The No-Fault Act mandates recovery of three times the benefits when an insurer willfully and wantonly fails to pay benefits "when due," and as discussed, benefits were due when the Geig-ers submitted their PIP claim to American Standard. § 10-4-708(1.8). Likewise, because American Standard's initial denial constituted a common law willful and wanton breach of the insurance contract, its subsequent denials and delays in payment are simply part of the original breach and do not constitute separate grounds for recovery. See Giampapa, 64 P.3d at 244 (defining common law willful and wanton breach of contract); cf. In re Church, 833 P.2d 813, 814 (Colo.App.1992) (each failure to pay for items delivered as part of an installment contract constitutes a separate breach). And, because a claim of bad faith breach of insurance contract encompasses an insurer's entire course of conduct, the Geigers cannot maintain separate claims based on American Standard's denial of benefits and subsequent delayed payment of benefits. See Dale, 948 P.2d at 552.
Finally, although the issue of liability is resolved in the Geigers' favor on each of their three substantive claims, the issue of damages remains unresolved. Accordingly, we also reverse the trial court's summary judgment on the Geigers' request for exemplary damages under section 13-21-101(1)(a), C.R.8.2007, and remand for further proceedings on the question of damages, which may include evidence of American Standard's conduct in delaying payment. Thus, although the trial court previously denied, in part, discovery requests by the Geigers regarding American Standard's liability, the Geigers may still request discovery relating to the issue of damages.
In summary, the trial court's judgment on each of the Geigers' claims is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion, including the entry of judgment for the Geigers on their claims of statutory willful and wanton conduct under section 10-4-708(1.8) of the No-Fault Act, common law willful and wanton breach of contract, and bad faith breach of insurance contract.
Judge TAUBMAN and Judge LOEB coneur.