Concerning the Application for Water Rights of Natural Energy Resources Company (NECO) in Gunnison County.

**NATURAL ENERGY RESOURCES COMPANY, Applicant/Appellant**

v.

**UPPER GUNNISON RIVER WATER CONSERVANCY DISTRICT; Crystal Creek Homeowners; Milton Graves, Douglas Bryant, and Nancy Williams as Trustees of (1) the Trust under the Will of Ernest Cockrell Jr., for the benefit of Ernest Cockrell and (2) the Louisiana Trust under the Will of Virginia Cockrell for the benefit of Ernest D. Cockrell II and (3) the Louisiana Trust under the Will of Virginia Cockrell for the benefit of David Cockrell; Colorado River Water Conservation District; Board of County Commissioners of Gunnison County; High Country Citizens' Alliance; City of Gunnison; Colorado Water Conservation Board; Frank Kugle, Division Engineer, Water Division No. 4; Taylor Park Cattle Association; Uncompahgre Valley Water Users Association; United States Department of the Interior, National Park Service; Department of Agriculture, Grand Mesa, Uncompahgre, and Gunnison Range District; Department of the Interior, Bureau of Reclamation, Western Colorado Area Office; and Trout Unlimited, Opposers/Appellees.**

No. 05SA267.

Supreme Court of Colorado,
En Banc.

Sept. 11, 2006.

Rehearing Denied Oct. 2, 2006.*

* Justice EID does not participate.

M.E. MacDougall, Julianne M. Woldridge, Henry D. Worley, MacDougall, Woldridge & Worley, P.C., Colorado Springs, Colorado, Attorneys for Applicant/Appellant, Natural Energy Resources Company.

John H. McClow, John R. Hill, Jr., Bratton & McClow, LLC, Gunnison, Colorado, Attorneys for Opposer/Appellee, Upper Gunnison River Water Conservancy District.

Charles B. White, David S. Hayes, Petros & White, LLC, Denver, Colorado, Attorneys for Opposer/Appellee, Crystal Creek Homeowners; Milton Graves; Douglas Bryant; and Nancy Williams.

Peter C. Fleming, Taylor E.C. Hawes, Kristin M. Gillespie, Glenwood Springs, Colorado, Attorneys for Opposer/Appellee, Colorado River Water Conservancy District.

David Baumgarten, Gunnison County Attorney, Thomas A. Dill, Deputy County Attorney, Gunnison, Colorado, Attorneys for Opposer/Appellee, Board of County Commissioners of Gunnison County.

Western Resources Advocates, Bart Miller, Boulder, Colorado, Attorneys for Opposer/Appellee, High Country Citizens' Alliance.

Victor T. Roushar, Montrose, Colorado, Attorney for Opposer/Appellee, Uncompahgre Valley Water Users Association.

Timothy J. Beaton, Gabriel D. Carter, Moses, Wittemyer, Harrison and Woodruff, P.C., Boulder, Colorado, Attorneys for Opposer/Appellee, City of Gunnison.

David W. Gehlert, U.S. Department of Justice, Environment and Natural Resources Division, General Litigation Section, Denver, Colorado, Attorneys for the United States of America.

Justice MARTINEZ delivered the Opinion of the Court.

Petitioner–Applicant, Natural Energy Resources Company ("NECO"), appeals the decision of the Water Court for Water Division No. 4 ("water court"), dismissing its application seeking a finding of reasonable diligence for its conditional decree ("Decree") entered in Case No. 82–CW–340 for storage rights in the Union Park Reservoir. The Decree's use provision contemplated using Taylor Park Reservoir as a forebay and afterbay for the proposed higher-elevation Union Park Reservoir in the production of hydroelectric power.

The Decree was originally granted in 1984. In 1986, NECO sought to expand the Decree as part of a proposed water development known as the Union Park Project. The Union Park Project sought to transfer water from the Upper Gunnison River Basin via a series of tunnels, pipelines, siphons, and flumes to Arapahoe County. A number of parties challenged the proposed project and NECO's water rights applications were litigated in two proceedings, Case Nos. 86–CW–226 and 88–CW–178, *aff'd in part, rev'd in part, In re Application for Water Rights of the Bd. of County Comm'rs of the County of Arapahoe, in Gunnison County*, 891 P.2d 952 (Colo.1995) (hereinafter *Arapahoe I*), *aff'd on reh'g sub nom. Bd. of County Comm'rs of County of Arapahoe v. Crystal Creek Homeowners' Assoc.*, 14 P.3d 325 (Colo.2000) (hereinafter *Arapahoe II* ).

In these adjudications, NECO and NECO's successor and predecessor in interest, the County of Arapahoe ("Arapahoe"), sought to expand upon the conditional Decree obtained in Case No. 82–CW–340. The Decree was expressly incorporated into the new applications. The two applications in Case Nos. 86–CW–226 and 88–CW–178 were ultimately denied. While these cases were still being litigated, NECO and Arapahoe maintained the 1982 Decree by satisfying the ongoing diligence requirement of section 37–92–301(4)(a)(1), C.R.S. (2005)[1]. Although several adverse rulings stemming from issues litigated in Case Nos. 86–CW–226 and 88–CW–178 would have otherwise barred NECO and Arapahoe from satisfying the "can and will" requirement of the diligence application, the rulings were still being appealed at the time of the diligence applications. Accordingly, the applications were not

---

1. The statute has not changed since the time of NECO's 2002 application. We refer to the 2005 statutes unless otherwise noted.

dismissed on grounds of issue preclusion because the courts had yet to issue a final decision on the merits.

The current diligence application, Case No. 04–CW–120, in contrast, followed the final judgment of Case Nos. 86–CW–226 and 88–CW–178 in *Arapahoe II*. Consequently, the water court denied NECO's application on summary judgment motion after finding NECO's ability to demonstrate the reasonable diligence "can and will" test was precluded by issues decided in the earlier rulings. The court specifically found that prior orders precluded NECO from using Taylor Park Reservoir as a forebay or afterbay or from implementing a proposed pumping station—features necessary for both the proposed Union Park Project and the original 1982 Decree's proposed hydroelectric power installation. Consequently, the water court cancelled NECO's conditional water right.

We now affirm the water court's summary judgment order. The issues of whether NECO obtained the necessary government permits to use Taylor Park Reservoir and whether the proposed pumping plant was feasible were litigated and finally adjudicated in *Arapahoe I* and *Arapahoe II*. NECO was the original party to litigate issues pertaining to the Decree, and is in privity with the only other party to litigate these same issues, Arapahoe. Both NECO and Arapahoe had a full and fair opportunity to litigate whether Taylor Park Reservoir may be used as a forebay and afterbay and whether a pumping facility may be installed; and they have done so. As the water court determined that the conditional right was unfeasible in Case Nos. 86–CW–266 and 88–CW–178 and these decisions have been affirmed in relevant part by this court, NECO is precluded from litigating these issues again. Thus, we affirm the judgment of the water court dismissing NECO's application seeking a finding of reasonable diligence in maintaining its conditional water rights in the 1982 Decree.

## I. Facts and Proceedings Below

NECO applied to the water court for a finding of reasonable diligence on a conditional storage right concerning Union Park Reservoir and Taylor Park Reservoir.[2] NECO's application regards a conditional Decree which has been the subject of lengthy and complex litigation. The application was denied on summary judgment by the water court because the court found that NECO was precluded from demonstrating that Taylor Park Reservoir could be used as a forebay and afterbay of the proposed Union Park Reservoir or from demonstrating that a pumping plant would be installed at Taylor Park Reservoir. Prior and finally adjudicated court orders determined that NECO failed to satisfy the "can and will" requirement[3] with respect to these features of the conditional Decree. Before addressing NECO's present application for a finding of diligence in maintaining the Decree and the Opposers'[4] argument that the application is barred by issue preclusion, we briefly review the facts and procedural history of the water rights at issue.

In 1984, NECO successfully obtained a conditional water right Decree for storage of 325,000 acre-feet in the proposed Union Park Reservoir for use in a planned water development known as the Union Park Reservoir Project.[5] The conditional water right was for the circulation of water between Taylor Park Reservoir and Union Park Reservoir for the generation of hydroelectric power. Specifically, the Decree contemplated using Taylor Park Reservoir as a pumping forebay

**2.** Taylor Park Reservoir is owned by the United States and operated by the Bureau of Reclamation for the benefit of the Uncompahgre Valley Water Users Association ("UVWUA") and the Upper Gunnison River Conservancy District.

**3.** § 37–92–305(9)(b), C.R.S. (2005).

**4.** The Opposers are: Crystal Creek Homeowners, Milton Graves, Douglas Bryant, and Nancy Williams as Trustees under the Will of Ernest Cockrell Jr., for the benefit of Ernest Cockrell and the Louisiana Trust under the Will of Virginia Cockrell for the benefit of Ernest D. Cockrell II, and the Louisiana Trust under the Will of Virginia Cockrell for the benefit of David Cockrell; Upper Gunnison River Water Conservancy District, Colorado River Water Conservation District, Board of County Commissioners of Gunnison County, and the High Country Citizens' Alliance.

**5.** Case No. 82–CW–340.

and power generation afterbay for the proposed higher-elevation Union Park Reservoir.[6]

Taylor Park Reservoir is located just west of the Continental Divide in Gunnison County near the geographical center of Colorado. The proposed Union Park Reservoir would lie nearby on Lottis Creek, a tributary of the Taylor River. The Taylor River runs from the Upper Gunnison River Basin down to join the East River, forming the Gunnison River near the City of Gunnison. Both Taylor Park Reservoir and the proposed Union Park Reservoir lie upstream of the Aspinall Unit, which is composed of three reservoirs: Blue Mesa Reservoir, Morrow Point Reservoir, and Crystal Reservoir. Although the 1982 Decree was more limited in scope, the Union Park Project ultimately sought to appropriate waters from the Upper Gunnison Basin and transfer them north and east to Arapahoe County via a trans-mountain diversion.

In 1986, NECO applied for changes to the conditional right.[7] NECO sought to increase the capacity of the proposed Union Park Reservoir from 325,000 acre-feet to 900,000 acre-feet, to direct flow rights for the project[8], and to expand the decreed uses for the entire storage right from hydroelectric power generation to include a number of uses, including several non-consumptive uses: re-

creation, fish and wildlife propagation, and reservoir evaporation replacement. The application for the 900,000 acre-feet capacity incorporated the 325,000 acre-feet capacity decreed in Case No. 82–CW–340, less 4,450 acre-feet which had been transferred to another point of storage in Case No. 85–CW–96. In addition to the increased storage capacity of the Union Park Reservoir, the proposed expansion of the Union Park Project sought to appropriate water from the Upper Gunnison River Basin for the use of Arapahoe via a trans-mountain diversion.

In 1988, while the application was still pending, NECO conveyed its interest in the Union Park Project to Arapahoe. Arapahoe was then substituted as the applicant in Case No. 86–CW–226. The Opposers[9] in that action moved for summary judgment. They argued that the appropriation was speculative because NECO had not obtained firm commitments for use of the water it sought to appropriate.

NECO's application in 86–CW–226 sought priority dates relating back to the time NECO applied for the original Decree in 1982. However, NECO also sought to use evidence of its intent to use the additional water from years subsequent to 1982. The water court disallowed this evidence[10] and granted the Opposers' motion in part, finding most of the application speculative. Specifi-

---

**6.** The Decree states in relevant part:
The use of the water will be for the generation of hydro-electric energy and power generation in general. Water will be released from Union Park Reservoir through the primary pumping-generating facilities and into Taylor Park Reservoir in generating mode, where said water shall again be diverted by the same facilities and pumping mode into Union Park Reservoir for reuse as part of the hydro-electric power project.

**7.** Case No. 86–CW–226.

**8.** NECO sought to transfer the water through a series of pipelines, tunnels, siphons, and flumes to Arapahoe County. The plan relied upon six different points of diversion, eleven alternate points of diversion, use of federal reservoir storage facilities, assessment and redetermination of federal water rights, condemnation of existing water rights, change of use of conditional water rights from nonconsumptive to consumptive uses, plans for augmentation, the possible purchase of water rights, and the reevaluation of

water rights in the Gunnison River Basin. *See Arapahoe I*, 891 P.2d at 957–58, n. 2.

**9.** The Opposers were: City of Gunnison, Colorado River Water Conservation District, Crystal Creek Homeowners' Association, Perkins D. Sams, Ernest H. Cockrell, National Wildlife Federation, Colorado Wildlife Federation, Gunnison Angling Society, Western Colorado Water Congress, Rainbow Services, Inc., High Country Citizens' Alliance, Trampe Ranches, the United States of America, Upper Gunnison River Water Conservancy District, Virgil & Lee Spann Ranches, City of Delta, City of Montrose, County of Gunnison, East River at Almont Property Owners' Association Inc., Three Rivers Resort, Gordon & Elsie Ferguson, Gunnison County Electric Association, Colorado Water Conservation Board, Colorado Division of Wildlife, State Engineer of Colorado, and the Uncompaghre Valley Water Users Association.

**10.** We subsequently affirmed this ruling in *Arapahoe I*, 891 P.2d at 964–66.

cally, the water court found the application speculative because it was filed by a private company, rather than a government agency, and did not comply with section 37–92–103(3)(a)(I), C.R.S. 15 (1979).[11] NECO failed to satisfy section 37–92–103(a)(I) because NECO did not demonstrate that it had formed the requisite intent to appropriate water in 1982, the year NECO claimed for three dates of appropriation in its application.[12] *See Arapahoe I,* 891 P.2d at 964–65. Further, NECO "failed to properly identify committed ultimate users, except for Parker County, Colorado, which was committed to purchase 1,000 acre feet claimed by NECO." The water court found "[t]his contract alone is totally inadequate to meet the requisites of the anti-speculation statute." Consequently, the water court dismissed that portion of the application that depended upon the appropriation of additional water.

The water court did not dismiss that portion of the application that sought to add non-consumptive uses for the existing conditional Decree. Consequently, that portion of 86–CW–226 proceeded and the remaining portion of the application which sought to expand the original Decree with 1982 priority dates for the additional water was dismissed.

Immediately after the dismissal of the application for the proposed expansion, Arapahoe filed a separate, nearly identical, claim in Case No. 88–CW–178. This application concerned the same water rights applied for and dismissed in Case No. 86–CW–226 but with a later priority date. Arapahoe changed the priority date so it could introduce evidence of its intent to appropriate water that occurred subsequent to the 1982 conditional appropriation.

Arapahoe later amended its applications in both 86–CW–226 and 88–CW–178 to include a plan for augmentation and to establish alternate points of diversion.[13] The remaining claims in 86–CW–226 seeking to add non-consumptive uses to the conditional Decree and the claims in 88–CW–178 proceeded to trial.

The trial for 86–CW–226 and 88–CW–178 was bifurcated by the water court. In phase I, the court determined whether water was available for the two applications. Phase II was to address the feasibility of the overall Union Park Project.

In phase I, Crystal Creek Homeowners Association, Perkins D. Sams, and Ernest H. Cockrell brought a pretrial motion pursuant to C.R.C.P. 56(h) requesting the court resolve numerous questions of law.[14] The water court issued a ruling on the Rule 56(h) motion on September 14, 1990. The water court entered its Findings of Fact, Conclusions of Law, Judgment & Decree on October 21, 1991.

In the 1991 Order, the water court summarized its approach to modeling and methodology for estimating water availability,[15] analyzed the existing absolute and conditional rights bearing on water·availability for the proposed Union Park Project,[16] addressed

---

11. Section 37–92–103 was enacted to address concerns about speculation in water rights. The definition of "appropriation" appears in section 37–92–103(3)(a) and reaffirmed this court's holding in *Colorado River Conservation Dist. v. Vidler Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979). *See Arapahoe I,* 891 P.2d at 959–60. This standard was later replaced by the "can and will" statute enacted in 1990. *See id.* at 960–61.

12. The three dates correspond to the three proposed sources for the water appropriation: Taylor River, Lottis Creek, and Willow Creek.

13. Arapahoe filed an amendment requesting alternate points of diversion for the conditional water rights on November 30, 1990.

14. The Opposers raised fourteen separate issues for resolution by the court. Although the water court addressed all of the issues, the rulings are only salient to our discussion here insofar as they relate to the trial court's Order issued on October 21, 1991, discussed infra.

15. In its ruling, the court established a framework for the trial, including modeling requirements for determining water availability. The water court required Arapahoe "to assume that all major senior conditional water rights will become absolute and that holders of absolute decrees will divert the amount of water that was decreed in determining water availability." *Arapahoe I,* 891 P.2d at 961. This standard was later ruled erroneous upon review in *Arapahoe I.*

16. The court examined in detail the water rights associated with the Aspinall Unit, including the Colorado River Storage Project Act and the Colorado River Basin Project Act. A full discussion of these historic water rights appears in *Arapahoe II.*

the necessary permitting to complete the Union Park Project, and discussed a number of other issues pertaining to the Project including Arapahoe's plan for augmentation and eminent domain considerations.

As relevant to the issue before us here, the court ultimately dismissed Arapahoe's claims because Arapahoe did not have permission to install or operate a pump-generating plant at Taylor Park Reservoir or permission to use Taylor Park Reservoir as a forebay, an afterbay, or a source of water for purposes of showing availability of water for its applications in Case Nos. 86–CW–226 and 88–CW–178.

Arapahoe had argued that the conditional right decreed in Case No. 82–CW–340 authorized the proposed use described within the Decree. The court disagreed and found that the conditional right decreed in Case No. 82–CW–340 granted a conditional water right, but did not authorize the use of Taylor Park Reservoir for any purpose. The 1991 Order explained in relevant part:

[¶ 153] a. First, *the Applicant's attempt to utilize the Taylor Park Reservoir in the operation of the Union Park Project is a violation* of the Water Supply Act of 1954, 43 U.S.C. § 390(b) which provides that *a major operational change in a federal project requires congressional approval.*

b. As stated above, the applications of the County of Arapahoe filed herein contemplate the installation and operation of a pump-generating plant in Taylor Park Reservoir. This Court has ruled that *the Applicant cannot make such an installation without the written permission of the Bureau of Reclamation.* (Order dated September 14, 1990, p. 14).

c. Applicant has not currently obtained federal approval or the approval of the UVWUA to alter (a) the water surface elevation of Taylor Park Reservoir, or (b) the rate at which water is released from the outlet of Taylor Park Reservoir. *Applicant has failed to secure permission of the Bureau of Reclamation, the UVWUA and/or Gunnison District to utilize the Taylor Park Reservoir, or water stored therein, pursuant to vested water rights. Applicant has neither applied for nor ob-*

*tained authorization from the Bureau of Reclamation to use either Taylor Park Reservoir or land administered by the Bureau of Reclamation.* (Undisputed Facts No. 23, 62 and 69).

d. Applicant asserts that the decree in Case No. 82–CW–340 provides it with the necessary authority to release water from Union Park Reservoir into Taylor Park Reservoir and thence through the outlet works of Taylor Park Reservoir into the Taylor River to satisfy provisions of the Decree in Case No. 82–CW–340. But, the Court rejects this position for the following reasons:

1) The *Applicant needs the consent of the United States to utilize the Taylor Park Reservoir, and it has not obtained that consent.* The United States was not a party to Case No. 82–CW–340. [See decree in Case No. 82–CW–340 (Exhibit 283) at p. 9, Paragraph VIII.1.E.(2) ] Even if the United States had been a party to Case No. 82–CW–340, the decree in that case could not have authorized the use of federal land or facilities. Under Colorado law, a court adjudicating a water right lacks jurisdiction to determine that an appropriator has a right of way over the lands of another. *Haines v. Fearnley*, 55 [56] Colo. 243, 246, 138 P. 541 (1914); *Snyder v. Colorado Gold Dredging Company*, 58 Colo. 516, 518, 147 P. 330 (1914) [ (1915 )]. The law is the same under the Colorado Water Right Determination and Administration Act of 1969, § 37–92–101 *et seq.* In *FWS v. State of Colorado, Division of Wildlife*, 795 P.2d 837, 841 (Colo. 1990), the court held that the water court properly refused to adjudicate land ownership interests because they only tangentially involved water matters. *See also Mountain Meadow Ditch and Irrigation Co. v. Park Ditch and Reservoir Co.*, 130 Colo. 537, 277 P.2d 527 (Colo.1954) (a water right does not represent actual ownership in any real property appurtenant to the water).

2) Under Federal law, the result is the same. *Any use or encumbrance of land or other property belonging to the United States must be in accordance with rules*

*established by Congress.* U.S. Const. art. IV, § 3, cl 2. "While courts must eventually pass upon them, determinations under the property clause are entrusted primarily to Congress." *Kleppe v. New Mexico,* 426 U.S. 529, 536, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). Furthermore, a Colorado water right carries with it no right to the use of Federal land. *Denver v. Bergland,* 517 F.Supp. 155 (D.Colo.1981), aff'd in part and rev'd in part on other grounds, 695 F.2d 465 (10th Cir.1982).

e. Therefore, *the decree in Case No. 82–CW–340 grants a water right to the owner of that decree but it does not authorize the Applicant to use Taylor Park Reservoir for any purpose.*

(Emphasis added).

The court then dismissed Arapahoe's claim for the Taylor Park pumping plant and ordered that Arapahoe could not rely upon the use of Taylor Park Reservoir as a forebay, an afterbay, or a source of water for purposes of showing availability of water for its applications in Case Nos. 86–CW–226 and 88–CW–178. The court reached this conclusion because steps had not been taken to secure the necessary permits for the project by the court ordered date of April 15, 1991.

The relevant portion of the 1991 Order states:

[¶ 172.] It is the law of this case (based upon pretrial orders) that *Arapahoe cannot rely on the use of Taylor Park Reservoir to show that water is available for its project, nor can Arapahoe utilize the Taylor Park Pumping Plant unless it obtained consent from the Bureau and from the UVWUA on or before April 15, 1991.* (See: ¶¶ 16(c) and (d), and ¶¶ 117 and 118 of this Decree)[.] Arapahoe failed to timely obtain said consent.... based upon the evidence presented at trial, it appears that even if the Applicant does not use the Taylor Park Reservoir as a "forebay," it still intends to use it as an "afterbay" in which to release water so as to maintain certain minimum flows as required by the decree in 82–CW–340, and to facilitate its

generation of power, utilizing its so-called "Taylor Park Pumping Plant." The Court concludes that *this feature of the Applications constitutes an impermissible use of the Taylor Park Reservoir,* and that the Bureau has the right to object to said use....

(Emphasis added).

Next, the water court determined that no more than 20,000 acre-feet of unappropriated water was legally available for appropriation at the points of diversion claimed by Arapahoe. Phase II was to address the feasibility of the overall Union Park Project. However, this phase was never reached as Arapahoe advised the court that 20,000 acre-feet was insufficient to justify proceeding. Accordingly, the water court entered its final orders and dismissed Arapahoe's applications on December 30, 1991.

Arapahoe appealed the earlier dismissal of NECO's claims in 86–CW–226 and the claims as amended in both 86–CW–226 and 88–CW–178. We addressed two main arguments from Arapahoe on appeal.[17] First, Arapahoe argued that it should have been permitted to offer evidence of ongoing efforts to obtain commitments for the water sought up to and including the date of the trial. *See Arapahoe I,* 891 P.2d at 963-64. We affirmed the water court's holding that NECO had to establish the requisite intent when the application was filed and was not allowed to use evidence post-dating the priority date of the application to show the intent to appropriate the water at the time of the application. *Id.* at 966.

Second, Arapahoe claimed water was available for its application based upon then current water usage in the Gunnison River Basin. *Id.* At trial, the Opposers and Arapahoe presented different models predicting water availability. Because the models relied upon different assumptions regarding absolute and senior conditional water rights decrees, they produced highly divergent results. *Id.* at 968. The water court assumed that all major senior conditional water rights would become

---

17. While we also addressed a cross-appeal by several of the Opposers, that issue is not relevant to our discussion here.

absolute and that holders of absolute water rights would divert the full amount permitted under the decrees. Based upon this assumption, the water court found that a maximum of 20,000 acre-feet of water was available. Observing this was "an unrealistically high assumption[ ] of water utilization," we found this standard to be erroneous. *Id.* at 970. We held that "[c]onditional water rights under which no diversions have been made, or are being made, should not be considered, and absolute water rights should be considered to the extent of historical diversions rather than on the assumption that maximum utilization of the decreed amount is the amount used." *Id.* at 962.

Consistent with these findings, we affirmed the water court's decision in part, reversed in part, and remanded for further proceedings. *Id.* at 973. Because we found the court used an erroneous standard to determine water availability, the case was remanded for a new water availability determination. The remaining findings of the water court were not disturbed.

Upon remand, the water court concluded that a new trial was necessary to determine the availability of water for the claims as amended in 86–CW–226 and 88–CW–178. In a 1996 Order Regarding Pending Motions, the water court ordered a new trial, permitted Arapahoe to amend its application, and denied a motion to dismiss. The water court denied Arapahoe's request to revisit the issue of "whether the United States will ultimately grant [Arapahoe] authority to use Taylor Park Reservoir as a forebay or an afterbay to divert 1,000 c.f.s. of water to serve the Applicant's project." The water court found that based on evidence presented in the 1991 trial, the proposed pumping station was "inimical to the use of the Taylor Park Reservoir by the United States and by the Uncom-

paghre Valley Water Users Association." The court withdrew its finding that Arapahoe had to obtain consent by the April 15, 1991 deadline. Nonetheless, the court found that the proposed use of Taylor Park Reservoir "would clearly be a major operational change and would obviously be disruptive and invasive of the owner's [United States] own rights and uses for the Reservoir." Finding the Project incompatible with the United States' ownership and use of the water, the water court found it was "not reasonable to expect that the Applicant can ever obtain consent of the United States to so materially alter the use of the Taylor Park Reservoir." Accordingly, the water court declined to revisit these issues.

Following retrial on the remaining issues, the water court dismissed the two applications in 86–CW–226 and 88–CW–178, finding only 15,700 acre-feet available for the Union Park Project. As this determination eliminated the need to try the issues reserved for phase II, the water court once again declined to proceed to phase II of the trial and denied the applications.

Arapahoe appealed the decision, raising a number of complex issues which we addressed in *Arapahoe II,* 14 P.3d at 331.[18] Most of the issues raised by Arapahoe concerned whether there was sufficient water available in the Gunnison River Basin for the Union Park Project. In effect, Arapahoe was again arguing that there was adequate water available for its proposed use and that its project was feasible. Upon review of the water availability in the Gunnison River Basin, including a detailed review of the history of interstate compacts, we concluded that Arapahoe could not satisfy the "can and will" test for its conditional water rights applications because the Gunnison River Basin does

---

**18.** The specific issues appealed in *Arapahoe II* by Arapahoe were:
  A. Whether the water court properly followed this court's mandates in applying the "can and will" test to determine water availability.
  B. What effect should the Colorado River Storage Project have on water availability in Colorado.
  C. Did the water court follow this court's mandates in its consideration of existing water rights to determine water availability.

  D. Should the water court have dismissed Arapahoe's conditional water right claim for a conditional water right for its pumping plant because it does not have an existing permit for that facility.
  E. What condemnation powers may Arapahoe rely upon to show water availability.
  F. Did the water court err by allowing a witness to testify extensively as an expert after he was endorsed only as a limited fact witness.
  *Arapahoe II,* 14 P.3d at 331.

not contain enough unappropriated water for the Project.[19]  We concluded that "[a]bsent subordination for transbasin use by BUREC [Bureau of Reclamation] or a contract with BUREC, Taylor Park's and Aspinall's senior water rights, in combination, preclude diversion of water above Taylor Park into the Union Park Project." *Id.* at 344.

We also held the water court's factual findings with respect to water availability in the second trial were within the water court's discretion, as the court correctly applied the standards we set forth in *Arapahoe I. Id.* at 333–34, 345.  We found the water court did not err in finding the Opposer's calculations of Taylor Park's historical use of water more reliable than Arapahoe's calculations as such a determination "is wholly within the water court's discretion as a trial court." *Id.* at 334.

Finally, we also upheld the water court's dismissal of Arapahoe's claim for a conditional water right for its pumping plant for lack of an existing permit in the Rule 56(h) Order. *Id.* at 344.  We agreed with the water court's ultimate conclusion that Arapahoe failed to prove it would acquire a permit to pump water from Taylor Park Reservoir or complete the pumping plant.  *Id.* Our opinion stated in relevant part:

> Opposers argue that the water court applied the "can and will" doctrine properly when it concluded Arapahoe failed to prove the feasibility of acquiring a permit to pump water from Taylor Park. Consequently, Arapahoe failed to prove that it "can and will" complete the Taylor Park pumping plant.  The water court reached this decision because *Arapahoe's proposed use of the Taylor Park Reservoir would disrupt decreed rights and would require a major operational change of the reser-*

voir to continue meeting its designed purposes.  Arapahoe offered little evidence to prove that the United States and the UVWUA would grant a permit in light of the significant changes that would have to be made to the reservoir's operations. *C.f. FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 839–40 (Colo.1990).  Therefore, *we uphold the water court's decision that Arapahoe did not meet the "can and will" requirements.*

*Id.* at 344 (emphasis added).

In sum, we affirmed the judgment of the water court and upheld all of the water court's findings challenged on appeal.  *Id.* at 345.  This included those challenges related to the ability of Arapahoe to obtain a permit to install a pumping plant at Taylor Park Reservoir or the necessary permits from the United States and the UVWUA to enact a "major operational change" to the use of Taylor Park Reservoir.  *Id.* at 344.  We also noted that all of the water court's decisions in the first trial regarding legal issues we did not review in *Arapahoe I* remained the law of the case except to the extent that the water court reconsidered those rulings in the second trial.  *Id.* at 331.  Accordingly, the water court's dismissal of Arapahoe's applications as amended in both 86–CW–226 and 88–CW–178 was affirmed.

Arapahoe transferred its remaining interest in the Decree back to NECO.  NECO then brought the current action, seeking a finding of reasonable diligence to satisfy the ongoing reasonable diligence requirement for the original 1982 Decree.

The Opposers moved for summary judgment on the basis that Arapahoe was precluded from satisfying the "can and will" test of its ongoing diligence requirement for the

19.  Our holding is summarized as follows:

> [T]he United States has an absolute decree for the Aspinall Unit water rights and has historically put the full decree to beneficial use.  Hence, the Decree represents a senior water right for 1,224,460 acre-feet, subject to certain conditions.  First, the United States has agreed to subordinate 60,000 acre-feet of water to junior in-basin water users.  Second, the United States has agreed to release water from the Aspinall Unit as necessary to allow Colorado to meet its Colorado River Compact [] delivery

obligation at Lee Ferry, near the northern border of Arizona.  Lastly, the United States has agreed to make 240,000 acre-feet of the Aspinall Unit decreed water available for contractual use by future Colorado water users.

> Once the Aspinall Unit is taken into account, the Gunnison River Basin does not contain enough unappropriated water for the Project.  Therefore, Arapahoe does not satisfy the 'can and will' test.

*Arapahoe II,* 14 P.3d at 329.

Decree. They argued that Arapahoe's conditional appropriation for the hydroelectric power project requires the use of Taylor Park Reservoir as a pumping forebay and afterbay, and that the water court had previously determined the Taylor Park Reservoir cannot be lawfully utilized for such purposes. Therefore, the Opposers contend, Arapahoe is collaterally estopped from satisfying the "can and will" test.

The water court agreed with the Opposers. The water court noted three specific prior rulings barring NECO from asserting that the project can and will be completed with diligence and within a reasonable time. First, the water court determined that the October 21, 1991 Order precluded NECO from using Taylor Park Reservoir as a forebay and afterbay. Second, it noted an earlier order dated September 14, 1990 that held the "use of Taylor Park Reservoir as a pumping forebay would necessarily constitute a major operational change." Third, the water court noted a February 14, 1996, ruling which held "Applicants' proposed pumping station is 'inimical' to the use of Taylor Park Reservoir by the United States and by the Uncompaghre Valley Water Users Association." The water court was satisfied that these issues were finally adjudicated and the conditions for issue preclusion had been met. Accordingly, in its Order on Opposer's Motion for Summary Judgment the water court denied NECO's Application for Reasonable Diligence and cancelled and dismissed NECO's conditional water right.

NECO now appeals the summary judgment of the water court.[20]

## II. Summary Judgment

We review a grant of summary judgment de novo. *ISG, LLC v. Arkansas Valley Ditch Ass'n,* 120 P.3d 724, 730 (Colo.

2005). We view all facts in the light most favorable to the nonmoving party. *See id.* Summary judgment will be granted only where there are no genuine disputed issues of material fact remaining. *Id.*

As a preliminary matter, we note that the feasibility of the conditional water right is a proper consideration of the court when addressing a summary judgment motion. Relying upon our decision in *Mun. Subdistrict, N. Colorado Water Conservancy Dist. v. OXY USA, Inc.,* 990 P.2d 701 (Colo.1999) [hereinafter *OXY*], the water court recognized this as a proper consideration of the court in a Rule 56(c) motion. In *OXY*, we noted that "the 'can and will' requirement of section 3792305(9)(b) should be read into a hexennial diligence application proceeding." *Id.* at 707. As the "can and will" statute rests at the heart of a continued diligence application for a conditional water right, it is an appropriate issue to address when raised on summary judgment motion. Accordingly, if an applicant cannot satisfy the "can and will" standard for demonstrating diligence in development of a conditional water right because the applicant is precluded by prior adjudications, the diligence application should be dismissed.

Here, the Opposers brought a Rule 56(c) motion to the court,[21] arguing NECO is precluded from satisfying the "can and will" test of its ongoing diligence requirement and, as a result, there are no genuine issues of material fact left to dispute. They contend the water court correctly dismissed NECO's application because NECO is precluded from establishing that it can use Taylor Park Reservoir as a forebay and afterbay for the generation of hydroelectric power as contemplated in the use provision of NECO's conditional Decree. Before addressing whether NECO is precluded from litigating the issue, we first address the nature of a conditional

---

**20.** NECO frames the issue as follows: Whether the Trial Court erred in granting Opposer's Motion for Summary Judgment, dismissing the Application for Finding of Reasonable Diligence, and canceling and dismissing the conditional water right.

**21.** C.R.C.P. 56(c) provides in relevant part:
Unless otherwise ordered by the court, any motion for summary judgment shall be filed no

later than seventy-five days prior to trial.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

right and the requirement to demonstrate ongoing diligence in maintaining a conditional water right to better frame our discussion.

### A. Conditional Water Rights

█ A conditional water right is an unperfected water right that has not yet ripened. *See Dallas Creek Water Co. v. Huey,* 933 P.2d 27, 35 (Colo.1997). Conditional rights are defined by statute as "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), C.R.S. (2005). Conditional decrees allow for the appropriation of water to relate back to the time the applicant took the first step in securing that appropriation. *FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 839–40 (Colo.1990) (citing *Rocky Mtn. Power Co. v. Colo. River Water Conservation Dist.,* 646 P.2d 383, 387 (Colo.1982)). They "encourage the pursuit of projects designed to place waters of the state to beneficial uses by reserving an antedated priority, in light of the necessity to obtain and complete financing, engineering, and the construction of works that will capture, possess, or otherwise control the water." *Dallas Creek Water Co.,* 933 P.2d at 35.

To maintain a conditional right, an applicant must demonstrate "continued intent and progress toward finalizing the conditionally decreed appropriation." *Id.* at 36. Colorado law mandates a reasonable diligence proceeding every six years to maintain a decreed conditional appropriation. § 37–92–301(4)(a)(I). The water court evaluates whether the applicant is developing that right "in a manner calculated to result in placing the subject waters to the beneficial use contemplated in the conditional decree." *City of Black Hawk v. City of Central City,* 97 P.3d 951, 956 (Colo.2004).

█ To show reasonable diligence in a conditional right, an applicant must demonstrate that the waters "can and will" be stored and beneficially used and that the project "can and will" be completed with diligence and within a reasonable time. *Id.; OXY,* 990 P.2d at 707. The "can and will" statute states:

No claim for a water right may be recognized or a decree therefore granted except to the extent that the waters can be and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

§ 37–92–305(9)(b).

We have frequently recognized that the test requires an applicant to establish a "substantial probability that within a reasonable time the facilities necessary to effect the appropriation can and will be completed with diligence." *City of Black Hawk,* 97 P.3d at 956–57 (internal citations omitted). An applicant's proof necessarily involves imperfect predictions of future conditions. *Id.* at 957. However, these predictions should not stray into the realm of improbable conjecture. *See Rocky Mt. Power Co.,* 646 P.2d at 389.

█ The purpose of the "can and will" statute is to subject conditional rights "to continued scrutiny to prevent the hoarding of priorities to the detriment of those seeking to apply the state's water beneficially." *Dallas Creek Water Co.,* 933 P.2d at 35 (internal quotation omitted). The General Assembly intended "to reduce speculation associated with conditional decrees and to increase the certainty of the administration of water rights in Colorado." *Arapahoe I,* 891 P.2d at 960 (quoting *FWS Land & Cattle Co.,* 795 P.2d at 840); *see also City of Thornton v. Bijou Irr. Co.,* 926 P.2d 1, 42 (Colo.1996); *In re Gibbs,* 856 P.2d 798, 800 (Colo.1993). Accordingly, the "substantial probability" standard is employed to curb indefinite speculation, not to protect a conditional water right where only the thinnest possibility remains that the project can and will be completed.

### B. NECO's Application

█ In this action, NECO seeks to demonstrate continued diligence for the original Decree, as it has done in two prior diligence proceedings. Case Nos. 88–CW–20, 96–CW–251. In each prior case, the water court found diligence and continued the conditional right. In the 1996 proceeding, the Opposers brought a similar challenge as the one raised

here. Namely, the Opposers argued NECO's conditional water right was unfeasible because the water court found Arapahoe's proposed use of Taylor Park Reservoir was unfeasible. Without the installation and use of a hydroelectric power pumping plant at Taylor Park Reservoir, the Opposers argued, NECO had no means of utilizing the Decree. Although the water court noted that this argument had merit, it declined to dismiss the diligence application on this basis, as the earlier finding on the use of the pumping facility was pending appeal and not yet final. *See Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo.2005) (holding a pending appeal prevents a prior judgment from constituting a final judgment for purposes of issue preclusion). As this application followed the resolution of that appeal, the water court addressed the issue squarely.

The Opposers brought a Rule 56(c) motion to dismiss NECO's application, arguing that the judgments issued in the prior adjudications were final, unappealable, and conclusively determined that NECO's conditional water rights in the original Decree were unfeasible. Specifically, they argue the decisions in Case Nos. 86–CW–226 and 88–CW–178 determined, in relevant part, that NECO and NECO's predecessor in interest, Arapahoe, were unable to use Taylor Park Reservoir as a forebay or afterbay for the proposed project. Because NECO seeks to use the same reservoir and pumpback system in its application that were ruled not feasible in 86–CW–226 and 88–CW–178, the Opposers contend NECO is precluded from satisfying the "can and will" test.

In response, NECO asserts that its application cannot be denied on the sole basis of NECO's failure to obtain the necessary government permits. NECO claims this violates section 37–92–301(4)(c), C.R.S. (2004), which prohibits the denial of a diligence application based on an applicant's failure to obtain government permits or approvals. Section 37–92–301(4) states in relevant part:

(b) The measure of reasonable diligence is the steady application of effort to complete the appropriation in a reasonably expedient and efficient manner under all the facts and circumstances. When a project or integrated system is comprised of several features, work on one feature of the project or system shall be considered in finding that reasonable diligence has been shown in the development of water rights for all features of the entire project or system. (c) Subject to the provisions of paragraph (b) of this subsection (4), *neither current economic conditions beyond the control of the applicant which adversely affect the feasibility of perfecting a conditional water right of the proposed use of water from a conditional water right nor the fact that one or more governmental permits or approvals have not been obtained shall be considered sufficient to deny a diligence application, so long as other facts and circumstances which show diligence are present.*

(Emphasis added). NECO argues that because it has never received denial of access to state or federal property, summary judgment is inappropriate.

Section 37–92–301(4)(c) would offer protection to NECO if "other facts and circumstances which show diligence are present." § 37–92–301(4)(c). Accordingly, we look to all of the relevant facts and circumstances to determine whether NECO's conditional right should be denied. Here, the courts have examined the relevant facts and circumstances and determined that it is "not reasonable to expect that the Applicant can ever obtain consent of the United States to so materially alter the use of the Taylor Park Reservoir," that NECO's proposed use of the Taylor Park Reservoir "would disrupt decreed rights and would require a major operational change of the reservoir," and that such use is altogether "inimical" to its present use. Implicit within these findings is the determination that there are no "other facts and circumstances" which show NECO's diligence in effectuating the conditional Decree.

Nevertheless, NECO contends that the conditional Decree cannot be denied because it has never received denial of access to state or federal property. In support of this argument, NECO relies upon language in *City of Black Hawk* stating that a party's present right and prospective ability to access water storage facilities is a relevant but not deter-

minative element of an applicant's burden of proof in maintaining a conditional decree. *See City of Black Hawk,* 97 P.3d at 957.

Initially, we note that the circumstances in *City of Black Hawk* are distinguishable from the circumstances here. In *City of Black Hawk,* we upheld the water court's factual findings that Black Hawk's proposal to enlarge an existing reservoir was technically feasible and that Black Hawk satisfied the requirements of the can and will statute. We upheld this decision despite Black Hawk's failure to obtain legal access to the necessary property at the time of the application.

There, we recognized that "[t]he ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be completed." *Id.* at 957 (quoting *FWS Land & Cattle Co.,* 795 P.2d at 840). And, we recognized "a party's present right and prospective ability to access water storage facilities [was] a relevant but not determinative element of the applicant's proof." *Id.* (citing *Bijou Irr.,* 926 P.2d at 43) (internal quotations omitted)).

In two prior decisions, *FWS Land & Cattle Co.,* and *West Elk Ranch, LLC v. United States,* 65 P.3d 479 (Colo.2002), we upheld decisions that denied water rights where the applicants were private citizens who were denied governmental authorization to access property underlying a proposed conditional water right. NECO argues that its application falls under our holding in *City of Black Hawk* because it has not received a final denial of authorization from either the state or federal government.

Although we distinguished the circumstances in *City of Black Hawk* from *FWS Land & Cattle Co.* and *West Elk Ranch* on this basis, our ruling should not be construed as holding that final denial of government authorization is requisite to denial of an application under the can and will statute. Rather, in *City of Black Hawk,* we looked at the particular circumstances of the case where nine days before trial Central City passed a resolution preventing Black Hawk from accessing the property and said resolution was not binding on future city councils. We determined that the present lack of access was not dispositive of the issue and, therefore, the water court was not clearly erroneous in upholding the decree.

The expansion of our holding in *City of Black Hawk* proposed by NECO would render the "can and will" test completely ineffectual. Although it is possible that Congress or the Bureau of Reclamation could intervene on NECO's behalf at some point in the future, the courts have already determined that this is altogether unlikely and "inimical" to the present uses of Taylor Park Reservoir. To allow NECO to maintain its conditional Decree when the proposed use of Taylor Park is "inimical" to its present uses and where it is not reasonable to expect that NECO can ever obtain permission for its proposed uses would leave the Decree in a permanent state of indeterminacy, as the courts cannot predict with absolute certainty future government action. This indeterminacy is not the intended result of section 37–92–301(4)(c), nor is this congruous with the intent of the General Assembly in enacting the "can and will" requirement.

Accordingly, we conclude that the water court properly applied section 37–92–301(4) and did not afford protection to NECO based on 37–92–301(4)(c) because all relevant facts and circumstances do not show diligence. For these reasons, we reject NECO's argument that section 37–92–301(4)(c) protects NECO from the Opposers' issue preclusion claim. We now address whether NECO is precluded from proceeding with its diligence application.

### C. Issue Preclusion

Although interchangeable, we elect to use the term "issue preclusion" rather than "collateral estoppel." *See Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005). Issue preclusion is an "equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court in a prior action." *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo.2001); *see Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 84 (Colo.1999). Issue preclusion, like claim

preclusion,[22] "protects litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Argus Real Estate, Inc.,* 109 P.3d at 608 (internal citations omitted).

The doctrine of issue preclusion bars relitigation when the following criteria are met:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;

(2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;

(3) There was a final judgment on the merits in the prior proceeding; and

(4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*McNichols v. Elk Dance Colorado, LLC,* 139 P.3d 660, 667 (Colo.2006) (citing *Sunny Acres Villa, Inc.,* 25 P.3d at 47 (internal citation omitted)). *See also Bebo Constr. Co.,* 990 P.2d at 84; *Bijou Irr.,* 926 P.2d at 82. We address each prong of the issue preclusion test in turn.

First, we determine whether the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding. "For an issue to be actually litigated, the parties must have raised the issue in the prior action." *Bebo Constr. Co.,* 990 P.2d at 85. The issue must have been properly raised by appropriate pleading through a claim or cause of action, and been "submitted for determination and then actually determined by the adjudicatory body." *Id.* The issue must also have been necessary to that adjudication, that is, it must have affected the disposition of the case. *Id.* at 86.

Applying these concepts to the case at bar, we reach the same conclusion as did the water court; namely, certain issues litigated in Case Nos. 86–CW–266 and 88–CW–178 and affirmed in *Arapahoe I* and *Arapahoe II,* are the same as those raised by NECO's present claim.

In the applications litigated in Case Nos. 86–CW–226 and 88–CW–178, the conditional storage right in the 1982 Decree was expressly incorporated into the new applications. Accordingly, the underlying issues of whether the proposed use of Taylor Park Reservoir was feasible and whether NECO or Arapahoe was likely to obtain the required permits affected not only these new applications, but the feasibility of the original conditional Decree as well.

These issues have been contested throughout the litigation of Case Nos. 86–CW–266 and 88–CW–178. In the first trial, the water court found NECO's proposed use of Taylor Park Reservoir constituted a "major operational change" that required congressional approval. It also found that the installation of a pump-generating plant in Taylor Park Reservoir would require the written permission of the Bureau of Reclamation. These rulings are as applicable to the original Decree as they are to the applications in Case Nos. 86–CW–266 and 88–CW–178.

Following the remand ordered in *Arapahoe I,* the water court expressly noted it would not revisit the issue of "whether the United States will ultimately grant [Arapahoe] authority to use Taylor Park Reservoir as a forebay or an afterbay," and found the proposed pumping station "inimical to the use of the Taylor Park Reservoir by the United States and by the Uncompaghre Valley Water Users Association." The court reiterated that the proposed use of Taylor

22. While closely related to issue preclusion, claim preclusion bars "relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not." *Argus Real Estate, Inc.,* 109 P.3d at 608. In contrast, issue preclusion bars relitigation of issues that were actually litigated. *See Bebo Constr. Co.,* 990 P.2d at 85–86. As the present case concerns NECO's latest sexennial application for a finding of continued diligence in maintaining a conditional water right and is not an attempt to relitigate prior claims, it does not raise a claim preclusion problem, per se. However, because the present claim involves legal issues which have been previously addressed by the courts in the context of other water applications, issue preclusion will bar any claims which have been actually litigated and necessarily adjudicated, provided there was a final judgment on the merits and NECO, or a party in privity with NECO, had a full and fair opportunity to litigate the issue.

Park Reservoir "would clearly be a major operational change and would obviously be disruptive and invasive of the owner's [United States] own rights and uses for the Reservoir." Finally, the water court found it was "not reasonable to expect that the Applicant can ever obtain consent of the United States to so materially alter the use of the Taylor Park Reservoir." Again, these rulings affect both the original Decree and the applications in Case Nos. 86–CW–266 and 88–CW–178 alike.

In *Arapahoe II,* we specifically upheld the findings that the pumping station was unfeasible and that the proposed changes constituted a "major operational change":

> Opposers argue that the water court applied the "can and will" doctrine properly when it concluded Arapahoe *failed to prove the feasibility of acquiring a permit to pump water from Taylor Park.* Consequently, Arapahoe failed to prove that it "can and will" complete the Taylor Park pumping plant. The water court reached this decision because *Arapahoe's proposed use of the Taylor Park Reservoir would disrupt decreed rights and would require a major operational change* of the reservoir to continue meeting its designed purposes. Arapahoe offered little evidence to prove that the United States and the UVWUA would grant a permit in light of the significant changes that would have to be made to the reservoir's operations. *C.f. FWS Land & Cattle Co. v. State Div. of Wildlife,* 795 P.2d 837, 839–40 (Colo.1990). Therefore, we uphold the water court's decision that Arapahoe did not meet the "can and will" requirements.

*Arapahoe II,* 14 P.3d at 344 (emphasis added). We affirmed the water court's dismissal of Arapahoe's claim for a conditional right for the pumping plant because Arapahoe lacked an existing permit and "could not meet the 'can and will' requirements for a conditional decree." *Id.* at 346. The determination that Arapahoe lacked necessary permits and the proposed uses of Taylor Park Reservoir "would disrupt decreed rights and would require a major operational change" is as true for the applications in Case Nos. 86–CW–266 and 88–CW–178 as it is for the 1982 Decree.

Although the claims in Case Nos. 86–CW–266 and 88–CW–178 sought to expand the use and capacity of the Union Park Project, the underlying issues of whether the pumping station and required permitting were feasible affected not only these additional claims but the feasibility of the original 1982 conditional water rights Decree. We determined that the expansion of the Project was unfeasible on a number of grounds, many of which were directly applicable to the conditional use of Taylor Park Reservoir for the generation of hydroelectric power.

Because the 1982 Decree contemplates using Taylor Park Reservoir as a pumping forebay and power generation afterbay for the proposed Union Park Reservoir, it is dependent upon both the use of Taylor Park Reservoir and the use of the proposed pumping station. As these issues have been directly addressed by the courts, NECO may not revisit these issues provided the remaining prongs of the issue preclusion test are satisfied.

■ We find the remaining criteria for issue preclusion are easily fulfilled. The second prong, whether the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding is clearly met. "Privity exists when there is a substantial identity of interests between a party and a non-party such that the non-party is virtually represented in litigation." *People in Interest of M.C.,* 895 P.2d 1098, 1100 (Colo.App.1994) (citation omitted). *See also City and County of Denver By and Through Bd. of Water Comm'rs v. Consol. Ditches Co. of Dist. No. 2,* 807 P.2d 23, 32–33 (Colo.1991).

■ Here, NECO is identical to the applicant in the original Decree as well as the applicant in Case No. 86–CW–266. Arapahoe was substituted for NECO in subsequent litigation after NECO transferred its rights in the Union Park Project to Arapahoe. NECO and Arapahoe are in privity as they have each held the same conditional water right and pursued nearly identical claims throughout the history of the case. This is especially apparent when the applications for 86–CW–266 and 88–CW–178 are compared.

The only substantive differences between the two applications are the applicant names (NECO and Arapahoe, respectively) and the priority dates for the claims.

There is thus sufficient commonality of interest between NECO and Arapahoe to satisfy the privity requirement of issue preclusion. To the extent, then, that any issue in the present litigation is identical to an issue previously resolved in Case No. 88–CW–266 and *Arapahoe II* where Arapahoe and not NECO was a named party to the suit, NECO is precluded from religitating those issues. Thus, because NECO was either identical to or in privity with a party to all the aforementioned litigation concerning the original 1982 Decree, NECO is precluded from relitigating any issues finally resolved therein.

▬▬▬ The third prong of the issue preclusion test is also satisfied as there was a final judgment on the merits in a prior proceeding. For a judgment to be final, it must "end[ ] the particular action in which it is entered, leaving nothing further for the court to do in order to completely determine the rights of the parties involved in the proceeding." *McNichols*, 139 P.3d at 668 (internal quotation omitted).

NECO argues that the adjudication of the conditional water right was never made final. Specifically, NECO contends that Case Nos. 86–CW–226 and 88–CW–178 resolved the issue of "availability of water" and not the feasibility of the Project. We reject this argument.

Although the water court's ultimate conclusion following phase I of both trials resolved the issue of availability of water, the additional determinations of the court which were finally adjudicated in those trials following a full and fair opportunity to litigate those issues are also barred by issue preclusion. This includes the findings noted above—namely, that NECO is precluded from using Taylor Park Reservoir as a forebay and afterbay and that NECO is precluded from use of the proposed pumping station. It is these findings—not the conclusion that water was unavailable for the proposed expansion of the Decree—that bars NECO from now asserting that the original 1982 Decree remains feasible.

In *Arapahoe I*, we affirmed part of the water court's original determination and reversed the court only with respect to the legal standard for modeling water availability and the court's attendant finding that the water was insufficient to meet Arapahoe's proposal. Following remand and a new trial, the court issued new rulings in light of *Arapahoe I*. In *Arapahoe II*, we affirmed the water court's new rulings. With the judgment issued by this court in *Arapahoe II*, all of the remaining issues in both Case Nos. 86–CW–266 and 88–CW–178 were finally adjudicated.

Therefore, a final judgment has been adjudicated on the issues at bar. They cannot be relitigated.

▬▬▬ Finally, the fourth prong is also satisfied as the party against whom the doctrine is asserted, NECO, has had a full and fair opportunity to litigate the issues. The factors we consider in this determination include "whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, whether the party in privity in the first proceeding has sufficient incentive to vigorously assert or defend the position of the party against which collateral estoppel is asserted, and the extent to which the issues are identical." *McNichols*, 139 P.3d at 669 (citing *Bennett College v. United Bank of Denver, Nat.'l Ass'n*, 799 P.2d 364, 369 (Colo.1990)).

Throughout all of the litigation concerning the Decree, NECO and NECO's predecessor in interest, Arapahoe, have had an interest in demonstrating the feasibility of the Union Park Project in order to satisfy the "can and will" requirement underlying the conditional water right awarded in the 1982 Decree. The feasibility of the project depended, in part, upon the proposed use of Taylor Park Reservoir as a forebay and afterbay and the installation and use of a pumping station at Taylor Park Reservoir. It is plain from the history of the case that NECO has had a full and fair opportunity to litigate the feasibility of the proposed Union Park Project and by

inclusion, the feasibility of the proposals related to Taylor Park Reservoir.

### III. Conclusion

We affirm the summary judgment of the water court. NECO was the original party to litigate issues pertaining to the Decree, and is in privity with the only other party to litigate these same issues, Arapahoe. The issues of whether NECO could use Taylor Park Reservoir as a forebay and afterbay and whether NECO could use the proposed pumping station have been contested throughout the proceedings in Case Nos. 86–CW–266 and 88–CW–178. NECO and Arapahoe had a full and fair opportunity to litigate these issues and have done so. As the water court's holdings in Case Nos. 86–CW–266 and 88–CW–178 have been affirmed in relevant part by this court and are final, NECO is precluded from litigating these issues again. Because NECO cannot use Taylor Park Reservoir as a forebay or afterbay and cannot install or use the proposed pumping station, NECO cannot satisfy the use provision of the conditional decree, i.e., that "the water will be for the generation of hydro-electric energy and power generation in general," and "will be released from Union Park Reservoir through the primary pumping-generating facilities and into Taylor Park Reservoir ... [and] again be diverted by the same facilities and pumping mode into Union Park Reservoir for reuse as part of the hydro-electric power project." Since NECO cannot use Taylor Park Reservoir as contemplated in the 1982 Decree, it cannot satisfy the "can and will" test of the required diligence proceeding. Consequently, there is no genuine material issue of fact left to be adjudicated.

Thus, we affirm the judgment of the water court dismissing NECO's application seeking a finding of reasonable diligence in maintaining its conditional water rights in the 1982 Decree.

Justice EID does not participate.